Vivian M. RODE and Jay C. Hileman, Appellants,

v.

Nicholas G. DELLARCIPRETE, John Harhigh, Josephine Fure, Ruth Brown, and Robert Kinch, Pennsylvania State Police and Commonwealth of Pennsylvania, Richard Thornburgh, Leroy S. Zimmerman, Jay Cochran, Jr., Appellees.

No. 89–5131.

United States Court of Appeals, Third Circuit.

Argued July 11, 1989.

Decided Jan. 4, 1990.

Shumaker & Williams, P.C., Lawrence W. Dague, Dianne E. Dusman (argued), Harrisburg, Pa., for appellants.

Ernest O. Preate, Jr., Atty. Gen., Calvin R. Koons (argued), Sr. Deputy Atty. Gen., John G. Koons, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, Pa., for appellees.

Before HIGGINBOTHAM, BECKER and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

This appeal stems from an award of attorney's fees pursuant to 42 U.S.C. § 1988. Appellants, prevailing parties in a civil rights action, sought attorneys' fees and costs of $186,328.88; the district court awarded them fees and costs of $54,746.02. Appellants argue that the district court committed several errors in determining their fee, specifically the court's rulings regarding delay compensation, duplicative or excessive work, the contingency and negative multipliers, the sufficiency of the fee petition and the fee generated preparing the fee petition. We will affirm in part, reverse in part, and vacate in part and remand to the district court for an award of fees and explanation thereof consistent with this opinion.

### I. *Facts*

#### A. *Underlying Litigation*

Appellant Jay C. Hileman was an area commander and former director of the personnel bureau of the Pennsylvania State Police (PSP). Vivian M. Rode was an administrative assistant in the personnel bureau. She also is Hileman's sister-in-law.

In 1982, Hileman was subpoenaed to testify in a race discrimination suit against the PSP. Hileman testified that the PSP engaged in racially discriminatory employment practices.

In 1986, appellants filed a seven-count complaint alleging that the Governor, the Attorney General, the PSP and several of its employees violated appellants' first and fourteenth amendment rights as well as the terms of a consent decree from another case and Section 704 of Title VII, 42 U.S.C. § 2000e-3.[1] Hileman alleged that soon after his 1982 testimony, the PSP retaliated against him, in part by transferring him to a PSP station more than 200 miles from his home and instituting unfounded disciplinary proceedings. Rode alleged that she was harassed after Hileman's testimony because she was his sister-in-law. She essentially claimed that she was demoted without reason and received a two day suspension for speaking to a reporter in violation of PSP Regulation 4-6.[2]

---

**1.** Rode's claims were Counts I through III; Hileman's, Counts IV through VII. In Count I, Rode claimed that defendants violated her first amendment rights to free speech and association and deprived her of a property right in her employment protected by the fourteenth amendment. In Count II, she claimed defendants conspired to violate her rights. In Count III, she challenged the constitutionality of PSP Regulation 4-6. In Count IV, Hileman claimed that defendants, Cochran, Dellarciprete, and Harhigh, deprived him of his right to free speech and his right to property under the fourteenth amendment. In Count V, he alleged a conspiracy. In Count VI, he claimed that Cochran and the PSP violated the terms of a consent decree entered into in a previous case. In Count VII, he claimed that the retaliation was an unlawful employment practice prohibited by 42 U.S.C. § 2000e-3.

**2.** In general, Regulation 4-6 prohibits employees of the PSP from publicizing information concerning the PSP without prior approval.

The district court granted defendants' motion to dismiss the claims against the Governor and Attorney General. The district court also granted defendants' motion for summary judgment against Rode as to Counts I and II, but required further briefing on Regulation 4–6 which was challenged in Count III. The court denied defendants' motion for summary judgment against Hileman except as to one defendant. After further briefing on Regulation 4–6, the court enjoined enforcement of certain provisions,[3] but held that Regulation 4–6.03A was not void for vagueness. Hileman then settled, receiving the relief he sought.

Rode appealed the dismissals and grant of summary judgment and this court concluded that, as applied, Regulation 4–6.03A violated Rode's first amendment rights and we remanded to the district court to determine damages on that issue; we affirmed the district court in all other respects. *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir.1988). On remand, Rode settled, essentially receiving the relief she sought under her first amendment free speech claim.

## B. *Fee Petition*

Appellants submitted a fee petition pursuant to 42 U.S.C. § 1988 seeking attorneys' fees and costs in the amount of $186,-328.88. Appellants calculated their fee request in the following manner: they sought $89,362.50 for Lawrence Dague, lead counsel (714.9 hours × $125 per hour); $30,266.00 for Dianne Dusman, associate counsel (337.4 hours × $90 per hour); $10,-925.00 for Carol Karl, paralegal (218.5 hours × $50 per hour); $6,470 for Michael Fenton, student law clerk (129.4 × $50 per hour); $3,980 in costs; and a 25% enhancement for contingency. Additionally, appellants requested that the court apply counsel's current hourly rates rather than his-

torical rates to compensate for delay. Lastly, appellants requested $10,944 in fees and costs incurred in preparing the fee petition.

Appellees opposed the fee petition on several grounds. First, they argued that an enhancement was inappropriate because appellants failed to establish that enhancement was necessary to attract competent counsel. Second, they argued that Attorney Dague's hourly rate was too high. Third, they argued that many hours devoted to the case were excessive and duplicative. They also noted that appellants' practice of aggregating the number of hours and tasks performed each day made it difficult to determine how many hours of work were devoted to a specific activity.[4] Fourth, they argued that the paralegal and law clerk time was excessive and should be billed at cost to the firm. Fifth, they challenged some of the costs sought by appellants. Lastly, they challenged the fee petition preparation time as "grossly excessive." In summary, appellees requested the district court to exclude: 498.4 hours of Dague; 217.9 hours of Dusman; 73.2 hours of Karl; 79.1 hours of Fenton; and 86.6 hours of the fee preparation.[5]

The district court awarded attorneys' fees and costs in the amount of $54,746.02. The court denied appellants' request for a 25% multiplier because appellants did not present evidence which would justify a contingency multiplier. The court concluded that the affidavits submitted by appellants failed to meet the standards enunciated in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware Valley II* ).

The court cut 20 hours of Attorney Dague's time spent defending the motion to dismiss the Governor and Attorney General

---

**3.** Defendants did not appeal the district court's conclusion that these provisions of Regulation 4–6 were unconstitutional.

**4.** For example:

| Description of Service | Date | Hours |
|---|---|---|
| cf. (Karl); R; T (Dusman); D (Complaint) | 6/6/85 | 5.5 |

| | | |
|---|---|---|
| D (Complaint); R/R; rev. (Complaint); D (Cover Sheet); TS (Ct. & Schmidt); cf (Client) | 6/7/85 | 5.1 |

**5.** Appellees did not challenge the delay compensation method sought by appellants, nor did they request application of a negative multiplier.

because appellant did not prevail against these defendants and these claims were sufficiently separable from the rest of the litigation. The court cut sixty-five hours of Attorney Dague's time devoted to the appeal as excessive. The court also cut twenty hours appellants spent on the motions for recusal and to amend the complaint because the motions did not facilitate defendant's offer of settlement.

The court made the following reductions without specifying how many hours it was reducing. The court reduced as excessive the number of hours spent briefing the challenge to the regulations and preparing the trial brief. The court also eliminated Attorney Dusman's duplication of Attorney Dague's efforts on the appeal. Next the court deducted hours for lack of specificity in the fee petition. The court concluded that the fee petition made it difficult to determine an appropriate award. At the end of its opinion, the district court calculated the various reductions it made for excessiveness, duplication and lack of specificity. For Attorney Dague, the court eliminated 205.7 hours for inadequate description. For Attorney Dusman, the court eliminated 145.6 hours for inadequate description or duplication or excessiveness. For paralegal Karl, the court eliminated 101.7 hours for inadequate description or duplication. For law clerk Fenton, the court reduced 122.1 hours for inadequate description. As to Dusman and Karl, the court failed to specify how many hours it was reducing for which of the reasons given.

The court rejected appellants' use of Attorney Dague's current billing rates to compensate for delay because it would result in "gross overcompensation." It also refused to compensate for delay because appellants failed to provide the court with a satisfactory substitute. The court also reduced the lodestar by one-third because appellants failed to succeed on Rode's associational claim and for what the court found to be the disorganized state of the fee petition.

Lastly, the court concluded that thirty-five hours for Dusman's time was appropri-ate for preparing the fee petition; therefore, it eliminated the 57.7 hours claimed by Dague and almost 9 hours claimed by Dusman. The court also applied a one-third negative multiplier to the hours devoted to the fee petition because appellants only partially succeeded in obtaining the fee award sought.

## II. *Appellant's Contentions*

Appellants raise several issues on appeal. First, appellants argue that the district court abused its discretion in denying their request for a 25% contingency multiplier. Second, appellants argue that the district court abused its discretion in reducing counsel's hours as excessive or duplicative, specifically the work on the motion to dismiss the Governor and Attorney General, the post-offer motions, briefing the constitutional challenge to the PSP regulations, preparing a trial brief and preparing for appeal. Third, appellants argue that the district court abused its discretion by failing to compensate for delay. Fourth, appellants argue that the district court abused its discretion by reducing hours for lack of specificity. Fifth, appellants argue that the district court abused its discretion by applying a one-third negative multiplier to the lodestar. Sixth, appellants argue that the district court abused its discretion in reducing the hours spent preparing the fee petition to thirty-five.

## III. *Scope of Review*

We review the reasonableness of an award of attorney's fees for an abuse of discretion. *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 909 n. 21 (3d Cir.1985). An abuse of discretion can occur when no reasonable person would adopt the district court's view. *Silberman v. Bogle*, 683 F.2d 62 (3d Cir.1982). Whether the district court applied the proper standards or procedures is a question of law subject to plenary review. *Student Public Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1442 n. 3 (3d Cir.1988). The district court's factual findings are reviewed under a clearly erro-

neous standard. *Id.* at 1442; *Silberman,* 683 F.2d at 65.

## IV. *Discussion*

### A. *Legal Framework*

This appeal involves many aspects of the Section 1988 analysis, and, to help avoid confusion, we first will discuss the general legal principles which have been developed to guide a district court's discretion in determining a reasonable attorney's fee.

■■■■ The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In a statutory fee case, the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713 (3d Cir.1989). The district court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Id.* at 720; *see Cunningham v. City of McKeesport,* 753 F.2d 262, 267 (3d Cir.1985), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731, *reinstated,* 807 F.2d 49 (3d Cir.1986), *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987). Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections. *Bell,* 884 F.2d at 721.

■■■■ "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. The district court should exclude hours that are not reasonably expended. *Id.* Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Id.* Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." *Institutionalized Juveniles,* 758 F.2d at 919 (quoting, *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943). The court also can deduct hours when the fee petition inadequately documents the hours claimed. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939.

■■■■ After determining the number of hours reasonably expended, the district court must examine whether the requested hourly rate is reasonable. Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Student Public,* 842 F.2d at 1447; *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11.

■■■■ Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar. The lodestar is presumed to be the reasonable fee. *Blum,* 465 U.S. at 897, 104 S.Ct. at 1548. However, the district court has the discretion to make certain adjustments to the lodestar. The party seeking adjustment has the burden of proving that an adjustment is necessary. *Cunningham,* 753 F.2d at 268.

■■■■ The court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained. *Hensley,* 461 U.S. at 434–37, 103 S.Ct. at 1940–41. This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims. *Id.* at 436, 103 S.Ct. at 1941. This adjustment should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar. *Black Grievance Committee v. Philadelphia Electric Co.,* 802 F.2d 648 (3d Cir.1986), *vacated on*

*other grounds,* 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987).

■ To date, the Supreme Court has restricted the court's discretion to adjust the lodestar upward. First, the district court can make "an appropriate adjustment for delay in payment—whether by application of current rather than historic hourly rates or otherwise." *Missouri v. Jenkins,* — U.S. ——, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). Second, the district court can adjust for quality of representation but "only in very rare circumstances where the attorney's work is so superior and outstanding that it far exceeds the expectations of clients and normal levels of competence." *Student Public,* 842 F.2d at 1453. Third, the district court can adjust the fee to account for the necessity of attracting competent counsel. This adjustment has been called a contingency multiplier and is to be granted only in rare cases. *Delaware Valley, II,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). Within this general framework, we will address each issue raised by appellants.

### B. *Contingency Multiplier*

Appellants first argue that the district court abused its discretion in denying their request for a contingency multiplier. Specifically, appellants assert that the three affidavits they submitted satisfy the evidentiary burdens of *Delaware Valley II,* and thus, without support of opposing affidavits, the district court erred in concluding that appellants' affidavits were insufficient. Appellants' argument raises two questions: first, whether the affidavits satisfied appellants' evidentiary burden; and second, if appellants satisfied their burden, whether the district court abused its discretion in denying the multiplier without support of opposing affidavits. We conclude that the affidavits do not meet the stringent requirements of *Delaware Valley II,* and thus, we do not reach the second question.

■ "The purpose of the contingency multiplier is to compensate counsel for the riskiness of undertaking the litigation." *Student Public,* 842 F.2d at 1451. The fee applicant has a significant burden to carry to obtain a contingency multiplier. *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 380 (3d Cir.1987). Contingency multipliers will be granted only in rare cases. *Student Public,* 842 F.2d at 1451. In order to obtain a contingency multiplier, the fee applicant must establish: (1) how the market treats contingency fee cases as a class differently from hourly fee cases, *Delaware Valley II,* 483 U.S. at 731, 107 S.Ct. at 3089 (O'Connor, J., concurring); (2) the degree to which the relevant market compensates for contingency, *id.* at 733, 107 S.Ct. at 3090;[6] (3) that the amount determined by the market to compensate for contingency is not more than would be necessary to attract competent counsel both in the relevant market and in its case, *id.* at 731 n. 12, 107 S.Ct. at 3089 n. 12 (White, J., plurality opinion), 733, 107 S.Ct. at 3090 (O'Connor, J., concurring); and (4) "that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Id.* at 733, 107 S.Ct. at 3090 (quoting plurality, *ante* at 730, 107 S.Ct. at 3089). *See also, Blum v. Witco,* 888 F.2d 975, 980–84 (3d Cir.1989); *McKenzie v. Kennickel,* 875 F.2d 330, 336–37 (D.C.Cir.1989); *Lattimore v. Oman Construction,* 868 F.2d 437, 439 (11th Cir. 1989); *Fadhl v. City and County of San Francisco,* 859 F.2d 649 (9th Cir.1988).

■ Appellants' evidence failed to satisfy the standards enunciated in *Delaware Valley II.* Appellants submitted affidavits of three attorneys. The affidavit of Steven J. Schiffman, who practices in the Middle District of Pennsylvania, provided the following relevant information: 1) when a case is a high risk, he requests an hourly rate of $85 per hour plus a percentage of any award; 2) he sets fees differently in civil rights cases; 3) without an enhancer, plaintiffs would face greater difficulty in obtaining representation; and 4) because of

---

6. We noted in both *Blum v. Witco,* 829 F.2d at 380–81 and *Student Public,* 842 F.2d at 1452 n. 18, that to produce this evidence a fee applicant may need an economist to testify.

the risk of nonpayment, he declined representing plaintiff Rode. The affidavit of Charles E. Schmidt, who also practices in the Middle District, provides the following relevant information: 1) his firm does not accept a contingency fee case unless it would generate a fee 50–100% over their normal hourly rate; 2) he is unaware of any experienced personal injury lawyer who would take a contingency fee case unless it generated significantly more than an hourly rate; and 3) without the presence of an enhanced fee, potential plaintiffs would have greater difficulty obtaining representation. The affidavit of Allen Levinthol, Director of the Dauphin County Bar Association, provides the following relevant information: 1) in Dauphin County, potential plaintiffs have difficulty obtaining representation for claims involving civil rights; and 2) this difficulty would be enhanced without the prospect of an enhanced fee.

■■■■ Essentially, these affidavits only indicate how *two* attorneys treat contingency fee cases differently than hourly rate cases, and that without some kind of enhancement, potential plaintiffs would have difficulty attracting competent counsel in these types of cases. This evidence does not satisfy the criteria of *Delaware Valley II.* We note that it is not the number of affidavits submitted that is important, rather it is the content of the affidavits and the expertise of the affiant, with a proper foundation, to make the representations contained therein. Counsel should seek to establish the necessity of a contingency multiplier in the same manner as he or she would seek to establish any fact which requires scientific, technical or specialized knowledge to understand—through use of expert testimony. *See* Fed.R.Evid. 702–706. In fact, a single person, qualified as an expert and with the proper foundation, could produce testimony that would satisfy the four evidentiary requirements of *Delaware Valley II.* Here, at a minimum, the affidavits fail to establish the first two requirements: how the relevant *market* treats contingency cases differently from hourly rate cases and the degree to which that market compensates for contin-

gency. *Compare, McKenzie,* 875 F.2d 330 (Court of Appeals approved the district court's award of a 50% contingency multiplier where the applicant submitted the affidavits of more than 20 practitioners which established that the "legal market required compensation for contingency" and that enhancements for such contingency ranged from 5% to 33⅓ to 300%.) We therefore conclude that the district court did not abuse its discretion in denying appellants' request for a contingency multiplier.

### C. *Hours Spent on Motions to Dismiss Governor and Attorney General*

■■■ Appellants argue that the district court abused its discretion when it deducted the hours appellants worked defending against the motion to dismiss the Governor and Attorney General. Appellants assert that the district court erred in concluding that the claims against the Governor and Attorney General were sufficiently separable from the rest of the litigation. We disagree.

A defendant should not "be required to compensate a plaintiff for attorney hours devoted to the case against other defendants ... who are found not to be liable." *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1214 (3d Cir.1978). However, attorney hours "fairly devoted" to one defendant that also support the claims against other defendants are compensable. *Id.* at 1215. Thus, hours chargeable to the claims against defendants who are found not liable are chargeable to defendants against whom plaintiff prevailed if "plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim[s] against" the defendants over whom plaintiff prevailed. *Pawlak v. Greenawalt,* 713 F.2d 972, 979 (3d Cir.1983) (quoting *Baughman,* 583 F.2d at 1215), *cert. denied* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984). Here, the district court concluded that the hours devoted to the motion to dismiss were sufficiently separable from the rest of the litigation to warrant deduction. We agree.

Although appellants correctly point out that much of their work on the successful claims overlapped their work on the claims against the Governor and Attorney General, the court only eliminated those hours specifically attributable to defending against the motions to dismiss the Governor and Attorney General. The hours worked on those motions did not further successful claims; rather, the time was spent solely on unsuccessful claims. Appellants failed to establish that the work solely defending the motion to dismiss was also in pursuit of its other claims. Such hours are properly deductible and the district court did not err in finding them separable nor did it abuse its discretion in deducting those hours.

### D. *Hours for Withdrawn Motions*

■ Appellants next argue that the district court abused its discretion by deducting the hours appellants worked on their motions to recuse the judge, to vacate judgment and to amend the complaint. Appellants assert that the district court disallowed the hours because of their settlement and that the court abused its discretion by deducting hours for that reason. In the circumstances of this case, the district court did not abuse its discretion.

On July 11, 1988, appellees made an offer of judgment of $2500. From July 6, 1988 to July 24, 1988, appellants expended time on the motions to recuse the judge, to vacate judgment and to amend the complaint. On July 21, appellees made a new offer of judgment. On July 25, appellants filed the three motions. On August 1, appellants accepted the July 21 offer of judgment without modification and withdrew the motions filed on July 25. The issue is whether the district court properly excluded time spent on the withdrawn motions which were filed *after* the July 21 offer of judgment was made.

Contrary to appellants' assertions, the district court did not deduct the time spent on the motions because they were withdrawn after the settlement. Apparently, the court concluded that the motions did not facilitate the settlement and as such

were not compensable. We cannot say this was an abuse of discretion.

This case presents an issue very similar to that addressed in *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897 (3d Cir.1985). In *Institutionalized Juveniles*, we approved the district court's deduction of hours expended after the date final relief was granted. We reasoned that

it was within the discretion of the district court, as it fashioned a reasonable fee, to disallow any fees for time spent litigating the case after the last benefit is won from the defendant, because the expenditure of such time is equivalent to expending time litigating particular claims that are unrelated to the relief ultimately obtained, for which *Hensley* directs a disallowance of fees.

*Id.* at 920. Here, the same rationale applies even though the hours were expended before the final relief was obtained. The motions were not filed until after the July 21 offer of judgment was made, and, therefore, we can assume that the offer of judgment was not made to settle the "claims" set forth in the motions. Thus, the time expended on the motions was unrelated to the relief ultimately obtained. Further, appellants' did not attempt to prove that the motions had an effect on the offer of judgment, nor did appellants seek to prove that defendants used the offer of judgment to get them to withdraw their motions. In these circumstances, we cannot say that the district court abused its discretion in deducting these hours. *E.g., Clark v. City of Los Angeles*, 803 F.2d 987, 993 (9th Cir.1986) (court excluded hours spent on the appeal of a claim which was not pursued where "nothing associated with the appeal contributed to any favorable result achieved by the litigation").

### E. *Excessiveness*

■ Appellants next argue that the district court abused its discretion by reducing as excessive the hours devoted to briefing the challenge to the PSP regulations, preparing a trial brief and preparing for appeal. Appellants question the district court's practice of eliminating hours with-

out any explanation beyond "excessive" and of not specifying how many hours were being eliminated.

The district court eliminated as excessive hours spent on the following services: 1) briefing the challenge to the PSP regulations; 2) preparing a trial brief; and 3) preparing for appeal. The court, however, identified only the number of hours it was reducing from Attorney Dague's time devoted to appeal: sixty-five hours; it failed to identify the number of hours it eliminated from the time devoted to the other services. Instead, the court grouped the hours it eliminated for excessiveness with hours it excluded for inadequate description.

When we examine hours eliminated by the district court as excessive, we are presented with two issues: first, whether the district court abused its discretion in concluding that the hours expended on a certain task were excessive; and second, whether the district court abused its discretion in concluding that a certain number of hours would be a reasonable number of hours to expend on that task. *See, e.g., DiFilippo v. Morizio,* 759 F.2d 231, 236 (2d Cir.1985) (After concluding that the hours expended were excessive, the court of appeals left to the district court on remand "the precise determination of the time to be compensated."); *cf., In re Illinois Congressional District Reapportionment Cases,* 704 F.2d 380 (7th Cir.1983) (Two issues in reviewing application of multiplier: 1) was a multiplier appropriate?; and 2) was a multiplier of three appropriate?).

In order for us to be able to resolve these issues, however, the district court must explain on the record the reasons for its decisions. *Ranco Indus Product Corp. v. Dunlap,* 776 F.2d 1135 (3d Cir.1985); *see Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir.1983).

Here, the district court summarily concluded that hours expended by Dague on appeal, and by both Dague and Dusman on the facial challenge to the PSP Regulations and the trial brief, were excessive. We need more reasoning than "they are excessive" to review the district court's decision. The district court should explain why it concludes that hours expended on a task are excessive. The district court's failure to make an adequate record in this case precludes us from properly discharging our reviewing function. *See, e.g., Ranco, supra.* We will remand to the district court for it to explain its reasoning for concluding that the hours were excessive.[7]

Although we will remand to the district court because it summarily concluded that the hours spent on the trial brief and the facial challenge to the PSP regulations were excessive, we also must remand these reductions because, in each instance, the district court failed to specify the number of hours that would be reasonable and why those hours would be reasonable. As we explained earlier, the district court must make an adequate record upon which we can review its decisions. *See, Ranco,* 776 F.2d 1135, *Ursic v. Bethlehem Mines,* 719 F.2d 670 (3rd Cir.1983). The court's failure to make an adequate record as to what hours would be reasonable to expend in preparing the trial brief and briefing the facial challenge to the PSP regulations and why those hours would be reasonable precludes our review. Thus, we will remand to the district court for it to specify the reasonable number of hours and to explain its decision.

### F. *Duplication*

■ Appellants next argue that the district court abused its discretion by eliminating hours worked by Attorney Dusman on appeal as duplicative. A reduction for duplication "is warranted only if the attorneys are *unreasonably* doing the *same* work." *Jean v. Nelson,* 863 F.2d 759, 773 (11th Cir.1988) (emphasis original) (quoting *Johnson v. University College,* 706 F.2d 1205, 1207 (11th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983)). Thus, we must determine whether

---

7. The district court also failed to explain why its selection of 65 hours for time spent on appeal would be reasonable. On remand, the court should also explain why its selection of hours is reasonable.

the attorneys unreasonably did the same work.

From our review of the record, Attorney Dusman claims to have expended 65.9 hours on the appeal. Appellees sought to eliminate 43.2 hours as duplicative of the services provided by Attorney Dague. The district court apparently agreed, eliminating "Attorney Dusman's duplication of his [Dague's] efforts on the appeal," slip op. at 7, but failed to indicate which hours were duplicative, as well as how many hours it was excluding. As we said in *Prandini v. National Tea Co.*, 585 F.2d 47, 52 (3d Cir. 1978),

> if the district court judge is of the opinion that the "number of hours" to be compensated must be reduced because some of those hours were charged to or directly benefitted a parallel case, the overlapping hours must be identified in the record, and the district court must make findings as to the number of hours of duplication.

Since the court failed to make any findings as to which hours it considered duplicative and why, we are precluded from review. Therefore, we will remand to the district court for it to specify the hours it finds duplicative and to explain why hours are duplicative.[8]

### G. *Delay Compensation*

■ Appellants next argue that the district court abused its discretion by rejecting their request for delay compensation. Appellants asked the court to compensate for delay by applying Attorney Dague's current hourly rate of $125 for work he expended before June, 1986 when his hourly rate was $80. Appellees did not object to this method of compensating for delay in their brief before the district court. The district court rejected appellants' request for three reasons: 1) the method was not prescribed by the Supreme Court; 2) appli-

cation of the method would result in a "gross overcompensation" for delay; and 3) appellants failed to provide the court with a satisfactory substitute to compensate for delay. We conclude that the district court erred in rejecting appellants' request for delay compensation because appellees failed to object to appellants' request. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir.1989); *Cunningham v. City of McKeesport*, 753 F.2d 262 (3d Cir.1985).

In *Cunningham*, we held that the district court could not disregard the uncontested affidavits of the fee applicant when the party opposing the fee request had an opportunity to "raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure." 753 F.2d at 267. In reaching this holding, we reasoned that it would protect the applicant's right to offer evidence in support of her request and, given the adversarial nature of statutory fee cases, there was no need to allow the district court to make sua sponte reductions. *Id.* In *Bell, supra,* we applied the reasoning of *Cunningham* to attorney fee cases under ERISA and extended *Cunningham* to allow a party opposing a fee request on reasonableness grounds to meet the objection required by *Cunningham* by filing an answer or a brief, with proper specificity, "so long as [they] ... can serve the same function of putting the applicant on notice that it must defend its fee position."[9] *Bell,* 884 F.2d at 720.

■ We are now presented with a slight variation of *Cunningham* and *Bell* in which the district court has sua sponte denied a post-lodestar adjustment request. We conclude that the variation has no legal significance. The reasoning applicable to prevent pre-lodestar sua sponte action applies equally to post-lodestar action. The

---

8. On remand, the district court should also specify which hours it considered duplicative with respect to paralegal Karl. We note that appellees only requested a deduction of 9.5 hours expended by Karl for duplication and that the court must take this limited request into account. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3d Cir.1989).

9. We note that when the accuracy of a petition is challenged or a factual issue is raised, affidavits must be introduced "averring the facts upon which the challenge is based." *Bell*, 884 F.2d at 720.

fee applicant retains the need to be notified that it has to defend its fee request and the adversarial nature of the process is as strong post-lodestar as pre-lodestar. Thus, we hold that the district court cannot deny a post-lodestar request when the party opposing the request, with full opportunity to do so, fails to object to that post-lodestar adjustment. In the instant situation, appellants requested delay compensation and appellees did not object to that method of delay.[10] As such, it was error for the district court to deny delay compensation, and we will reverse on this issue.

## H. *Lack of Specificity*

Appellants argue that the district court abused its discretion by deducting hours for lack of specificity in their fee petition. Appellants assert that the evidence they submitted to the court was specific enough for the court to determine if the hours reported were proper. Appellants also argue that the district court erred in adopting the standard enunciated by the Eleventh Circuit in *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292 (11th Cir. 1988). We agree with appellants that the evidence submitted is specific enough for the district court to decide if the work is proper and compensable. Accordingly, we conclude that the district court erred by reducing hours for lack of specificity and we will reverse on this issue.

In support of their fee petition, appellants submitted a computer-generated chronological list of the tasks performed and the time devoted to those tasks by the two attorneys, the paralegal and the law clerk who worked on the case. Appellants also submitted many of the actual time slips used to generate the computer list. Further, from October, 1985 to March, 1987, appellants submitted to the district court monthly statements of time which explained the work performed, the hours necessary to perform the work and the total time worked each month by each attorney, paralegal and law clerk.

In their brief before the district court, appellees argued,

it is difficult to assess with precision the amount of time spent on certain tasks or issues by plaintiffs' counsel. The difficulty arises because neither the fee application nor the supporting time sheets ... consistently break down time by specific tasks or necessarily identify specific issues. Rather, the general practice is to aggregate a number of tasks for which total time is given, as is done in the application for fees. In many cases, the nature of briefs, pleading, research, and conferences is not identified.

Defendants' Response to Plaintiffs' Application for Attorneys Fees at 8. The district court agreed. It first adopted the standard for fee petitions enunciated by the Eleventh Circuit in *Norman*, 836 F.2d at 1303:

fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with the sufficient particularity so that the district can assess the time claimed for each activity. (citations omitted) A well prepared fee petition also would include a summary, grouping the times entries by the nature of the activity or stage of the case.

Slip op. at 8–9. The district court then concluded,

Plaintiffs' attorneys have failed to describe their activities properly or to group the time spent by each lawyer and paralegal by activity. They have simply appended individual time records to their fee petition. The records themselves are in simple chronological order, making it extremely difficult to determine the total hours spent by all individuals on any particular motion, issue or part of the case. The problem is compounded by many abbreviations in the records which are unexplained and by the lack of any additional description of the work per-

---

**10.** Appellees did challenge Attorney Dague's hourly rate but only in the context of whether the rate was reasonable in light of the rates prevailing in the community, not in terms of delay compensation. In fact, appellees sought an hourly rate of $100, and the court used an hourly rate of $80 for many hours expended by Mr. Dague.

formed next to each code. We will make appropriate reductions for the lack of specificity in the petition.

Slip op. at 9. The district court then made the following reductions for lack of specificity: Attorney Dague, 205.7 hours; Attorney Dusman, up to 145.6 hours; paralegal Karl, up to 101.7 hours;[11] and law clerk Fenton, 122.1 hours. Not only do we disagree with the district court's application of the standard enunciated by the Eleventh Circuit in *Norman,* we also reject its conclusion that the submissions were insufficient.

We first will address the district court's application of the Eleventh Circuit's standard. The district court interpreted the *Norman* opinion as requiring summaries of overall time expended per task. We disagree with this interpretation for several reasons. First, the statement was made in dicta and the court did not apply the "standard" it announced, thereby making it impossible to determine exactly what the court meant by its standard. Second, we do not think the dicta requires future fee petitioners in the Eleventh Circuit to submit such summaries in order to obtain a fee. The language strikes us as more instructional than mandatory. The court seems to be informing fee petitioners that summaries are one way of aiding the district court in its endeavor and possibly avoiding unwanted reductions. Lastly, the court softened its language later in the opinion by stating, "[W]here documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing." *Norman,* 836 F.2d at 1303.

Even if the district court correctly applied the *Norman* opinion, we would hesitate to adopt such a requirement which, we think, places an onerous burden on the fee petitioner and, in this case, was unnecessary. Such summaries were unnecessary because a chronological listing of time spent per activity by attorneys is essentially a summary of the time spent per task. As evidenced by appellants' submissions, the work on most activities occurred over a short period of time and can easily be calculated by reviewing the chronological listing, as was done in this case by appellees. In light of this, we do not see the need for the summaries described by the Eleventh Circuit. We conclude that the district court applied the wrong standard in determining whether the fee evidence submitted by appellants was specific.

We next turn to the other alleged deficiencies found by the district court in the fee petition. Apart from failing to provide summaries, appellants, according to the district court, also failed to submit a fee petition which provided adequate and specific descriptions of services and the time devoted to those services. The court also stated that it could not interpret the abbreviations used by appellants. We conclude that appellants' submissions fully comply with the standards enunciated by this court.

In *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanatory Corp.,* 487 F.2d 161, 167 (3d Cir.1973), we indicated that a fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." *Id.* However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.; Pawlak v. Greenawalt,* 713 F.2d at 978. A fee petition is required to be specific enough to allow the district court "to determine if the hours claimed are unreasonable for the work performed." *Pawlak,* 713 F.2d at 978. Appellants' submissions satisfy these standards.

11. As to Attorney Dusman and paralegal Karl, we cannot determine the exact number of hours reduced for lack of specificity because, as previously explained, the district court commingled these reductions with its reductions for excessiveness and duplication.

Appellants submitted a computer-generated time sheet for each attorney, paralegal and law clerk who worked on the case. In each instance, the time sheet was in chronological order. Each entry provided the general nature of the activity and the subject matter of the activity where possible, e.g., T (Dusman); CF (client); R (re appeals), the date the activity took place and the amount of time worked on the activity. In some instances, appellants aggregated the work in a day on various activities.[12] Lastly, appellants, from October, 1985 to February, 1987, submitted monthly time reports to the district court. These reports were very specific and did not include the abbreviations which the district court had difficulty interpreting.[13] These various submissions provided enough information as to what hours were devoted to various activities and by whom for the district court to determine if the claimed fees are reasonable.

Appellees argue that appellants' aggregation of hours is improper and effectively prevents a district court from exercising review. Here, that is not the case. Aggregating tasks and hours by day, while not the best method of listing hours expended, does not in this case prevent review by the district court. Appellants did not aggregate hours for every entry. Although by aggregating hours appellants risked reduction for excessiveness because the court

may have assumed that more hours were spent on a task than actually were expended, appellants did not risk reduction for lack of specificity.[14]

■ Finally, we think we should comment on the monthly time reports submitted to the district court by appellants. This method of time keeping was recommended by the Third Circuit Task Force on Court Awarded Attorney Fees. In its final report, the Task Force recommended,

At the pretrial conference, the judge should direct that contemporaneous time sheets be submitted to the court or magistrate, if one has been appointed—at frequent, specified intervals. At the same time, it should be made clear what form the time sheets should take, what work and attorney categories should be used, and what hours will be compensated. This procedure enables periodic checking for insufficient reporting, unnecessary hours, duplication, and inconsistencies. If anything is amiss, the court should inform the attorneys of its views promptly in order to assure that the proper information is made available, to encourage any appropriate corrective action be taken, and to obviate any need for the imposition of serious sanctions.

Report of the Third Circuit Task Force, 108 F.R.D. 237, 271–72 (1985). Here, the district court required such reports to be submitted; yet, though many of the "prob-

---

**12.** See supra note 4.

**13.** A typical report was submitted as follows:

NOW COME Plaintiffs, Vivian M. Rode and Jay C. Hileman, by their attorneys, Laurence W. Dague and Dianne E. Dusman, pursuant to the Court's Order of October 2, 1985, to file the instant monthly statement of time devoted to handling the above-referenced action during the month of February, 1987. Listed below is the time devoted to this action by each attorney and law clerk/paralegal with a general indication of the legal issue involved.

1. Time of Laurence W. Dague, Esquire: Settlement: 12.9 hours; Application for Attorney's Fees: 4.1 hours; and miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: 1.3 hours. Total hours: 18.3.

2. Time of Dianne E. Dusman, Esquire: Settlement: 1.8 hours; Trial Brief: 5.2 hours; and miscellaneous research, telephone conversa-

tions, and conferences concerning facts, evidence, and witnesses: .2 hours. Total hours: 7.2.

3. Time of Carol L. Karl, law clerk/paralegal: Settlement: 1.9 hours; and miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: 1.8 hours. Total hours: 3.7.

4. Time of Michael Fenten, law clerk: miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: .2 hours. Total hours: .2.

**14.** Appellees also argue that the district court properly reduced hours for lack of specificity because the contemporaneous time slips did not support all of the hours listed on the time sheets. We disagree with the factual premise of appellees' argument. The district court did not indicate that it was reducing the hours because appellants failed to produce contemporaneous time slips. In view of the district court's opinion, we decline to address this issue.

lems" highlighted by the court in the chronological time sheets also existed in the monthly time reports, the district court did not object to the content of the submissions. If a district court requires the submission of monthly reports and has difficulty with the sufficiency of the content of those monthly reports, it should express its difficulty immediately so counsel can correct any deficiencies. As to the content of these reports, we think they sufficiently describe both the work performed and the hours worked.

In summary, we conclude that the district court applied the wrong standard in determining whether the fee petition was sufficient. We also conclude that the fee petition satisfied the standards followed by this circuit. We will, therefore, reverse on this issue.[15]

### I. *Negative Multiplier*

Appellants next argue that the district court abused its discretion when it applied a one-third negative multiplier to the lodestar to account for appellants' failure to succeed on Rode's associational claim and the disorganized state of the fee petition. Appellees did not ask the court to apply a negative multiplier. As with the delay compensation issue, we conclude that the district court erred in applying a negative multiplier when appellees failed to request a negative multiplier. *See Bell supra.* We will reverse on this issue.

### J. *Fee Petition Hours*

Lastly, appellants argue that the district court abused its discretion in the manner and extent it reduced appellants' request for $11,414.40 in fees and costs incurred in preparing the fee petition. They sought to compensate Attorney Dague for 57.7 hours and Attorney Dusman for 43.9 hours. Appellees argued that only fifteen hours should have been compensated and also argued that the hours spent on the fee petition be reduced in light of appellants' limited success in pressing the fee

petition. The district court simply concluded that appellants' time was "patently excessive" and that thirty-five hours of Attorney Dusman's time would be appropriate. The court also applied a one-third negative multiplier because of appellants' partial success on the fee petition.

Fee petition litigation should be treated as a "separate entity subject to lodestar and *Hensley* reduction analysis." *Institutionalized Juveniles*, 758 F.2d at 924. Thus, as we stated earlier, hours are excessive if they represent more time than is reasonably necessary to complete the task. *See, Hall v. Borough of Roselle*, 747 F.2d 838 at 842 (3rd Cir.1984). Appellants' argument raises two issues: first, whether the district court abused its discretion in concluding that 101.6 hours work on the fee petition is excessive; and second, whether the district court abused its discretion in concluding that thirty-five hours would be the number of hours reasonably devoted to the fee petition. "Patently excessive" is simply not an adequate explanation and we are unable to review the district court's conclusion without an explanation why the 101.6 hours is excessive. Further, without explanation, we cannot understand how it selected thirty-five hours of Attorney Dusman's time as reasonable to complete the task, especially when appellants devoted time on the petition itself, two briefs, several affidavits, as well as on broad discovery requested by appellees. For this reason, we will vacate the district court's selection of thirty-five hours and shall remand for the district court to determine the number of hours reasonably devoted to preparing the fee petition. We also reject the district court's application of the negative multiplier and remand for a reexamination consistent with this opinion.

### Summary

At oral argument, appellants requested that we not remand this case to the district court, but, instead, award a reasonable fee to appellants ourselves. This we cannot do. As we recently stated in *Daggett v.*

---

**15.** We should also note that the district court failed to identify which entries it thought were insufficient. Thus, even if we were to agree that parts of the fee petition were insufficient,

we would have to vacate and remand because we would be unable to exercise review without knowing which entries the district court found insufficient.

*Kimmelman,* 864 F.2d 1122, 1127 (3d Cir. 1989), "we cannot give in to the strong temptation to fix the fee ourselves, because the award of attorneys' fees is committed to the informed discretion of the district court." *But see, Mims v. Shapp,* 744 F.2d 946, 955 (3d Cir.1984) (court of appeals decided the award of attorneys' fee where the case had been in the system for ten years with three district judges and three court of appeals panels).

In summary, we will affirm that portion of the district court's order which denied the contingency multiplier, deducted the hours devoted to the motions to dismiss the Governor and Attorney General, and deducted the hours devoted to the withdrawn motions. We will reverse that portion of the district court's order which denied delay compensation, applied a negative multiplier, and concluded that the fee petition was inadequate to support an award of attorneys' fees. We will vacate that portion of the district court's order which (1) concluded that the hours worked by Attorney Dague on appeal, preparing the trial brief, briefing the challenge to the PSP regulations and preparing the fee petition were excessive; (2) reduced sixty-five hours on appeal; (3) reduced as excessive, compensation for time spent preparing the trial brief, the brief challenging the PSP regulations and the fee petition; (4) reduced as duplicative compensation for time spent by Attorney Dusman on appeal; and, (5) applied a negative multiplier to the hours devoted to the fee petition, and remand for an award of fees and an explanation supporting the award which is consistent with this opinion.

