Louis COLLINS, et al., Plaintiffs,

v.

**SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,**
Defendant.

No. CIV. A. 99–1225.

United States District Court,
E.D. Pennsylvania.

Oct. 14, 1999.

Stephen F. Gold, Philadelphia, PA, for plaintiffs.

Jeffrey M. Viola, Saul, Ewing, Remick & Saul, Philadelphia, PA, for defendant.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court is plaintiff's motion for attorney's fees and costs. Because the court finds that this request is reasonable and well-documented, the full amount will be awarded.

*Background*

On March 1, 1999, one of the plaintiffs, Louis Collins, refused to exit a SEPTA Para–Transit van to protest SEPTA's alleged failure to provide reasonably prompt service. He did not leave the van until March 2, 1999, and at that time he was promptly suspended from using Para–Transit's services. On March 3, 1999, the other plaintiffs also refused to exit Para–Transit vans to protest Mr. Collins' suspension. These plaintiffs were suspended as well.

Following these events, plaintiffs filed a motion for a temporary restraining order and a complaint alleging that SEPTA violated the Americans with Disabilities Act (ADA) and the due process clause of the Fourteenth Amendment by denying them access to Para–Transit services. Plaintiffs sought to enjoin SEPTA from continuing its actions and requested compensatory damages. Following a conference before this court, the parties negotiated a consent decree under which SEPTA agreed that its administrative appeal procedures would be completed within 45 days and that, during that time, plaintiffs could continue to ride Para–Transit vans so long as they did not engage in other disruptive activities. Louis Collins' suspension was upheld at the administrative appeal. After that administrative appeal, the parties negotiated a settlement that provided that (1) each suspension was limited to "time served"; (2) the suspensions would not be considered first offenses if the plaintiffs committed additional offenses in the future; (3) the suspensions would not affect plaintiffs' future Para–Transit eligibility; and (4) the lawsuit would be dismissed with prejudice. *See* Settlement ¶ 1.

*Discussion*

Prevailing parties in an ADA case may recover "reasonable" attorney's fees at the discretion of the court. *See* 42 U.S.C. § 12205. In general, the party

claiming the fees has the burden of showing that the demand is reasonable. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). Plaintiffs' counsel. Steven Gold seeks $8,725.50 in attorney's fees and $150.00 in costs. Mr. Gold calculated the attorney's fee by multiplying an hourly rate of $350.00 by the 24.93 hours he spent on the case. While defendant does not challenge the claimed costs, they object to the attorney's fees for three reasons: (1) plaintiffs did not prevail on all of their claims and thus should not receive full attorney's fees; (2) the time Mr. Gold expended was unreasonable; and (3) Mr. Gold's hourly rate was unreasonable. The court will consider each of these arguments in turn.

■ The test for determining a prevailing party is twofold. The first question is whether the "plaintiff achieved some of the benefit sought by the party bringing the suit"; the second question is causation, that is, whether the "litigation constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief." *Metropolitan Pittsburgh Crusade for Voters v. Pittsburgh*, 964 F.2d 244, 250 (3d Cir.1992) (citations omitted); *see also Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); *Institu-*

*tionalized Juveniles v. Secretary of Pub. Welfare*, 758 F.2d 897, 910 (3d Cir.1985) (same).[1]

■ As the defendant has not challenged causation, the court will focus on the question of relief. In evaluating the success of a party, the most important issue is a comparison of the relief sought and obtained; it is not proper to determine the prevailing party based purely on the success of its different legal theories. *See Institutionalized Juveniles*, 758 F.2d at 911. The relief obtained need not be identical to the relief sought so long as it is of the "same general type." *Id.*[2] For example, even if a plaintiff initially challenged a lack of pre-deprivation process, achievement of post-deprivation rights may warrant a finding of prevailing party status. *See id.* at 912. In awarding fees, however, it is proper for the court to exclude time spent on claims that are totally distinct from prevailing claims. *See id.* at 919.[3]

Defendant concedes that plaintiffs are prevailing parties insofar as their suspensions were limited and their access to Para–Transit services was reinstated. It argues, however, that the plaintiffs did not prevail on their claim that SEPTA had violated the ADA or due process by failing to provide comparable transportation services or by improper denial of services. Nor did plaintiffs receive any compensatory damages. Defendant also stresses that Mr. Collins' suspension was upheld in the administrative hearing and that plaintiffs

---

1. All three of these cases actually addressed the determination of attorney's fees under 42 U.S.C. § 1988. As the Third Circuit has not explicitly ruled on the proper test to be used in ADA cases, this court, like numerous other district courts, will apply the standards described in those cases given the similar language and goals of the two statutes. *See, e.g., Dunkelberger v. Uni–Marts, Inc.*, Civ. A. No. 96–7784, 1998 WL 195906, at *2–3 (E.D.Pa. Apr.14, 1998) (applying 42 U.S.C. § 1988 test to ADA case); *Watson v. SEPTA*, Civ. A. No. 95–1002, 1998 WL 720072, at *1 (E.D.Pa. Sept. 10, 1988) (same).

2. Defendant agrees that plaintiffs may be considered a prevailing party even though they

achieved their benefits by means of a settlement and consent decree. *See, e.g., Farrar*, 506 U.S. at 111, 113 S.Ct. 566 (noting that a settlement may affect defendants' behavior in a way benefitting plaintiffs); *Institutionalized Juveniles*, 758 F.2d at 911 (stating that resolution by settlement does not preclude a finding of prevailing party status).

3. The court acknowledges that many of these issues might more properly be addressed in the subsequent discussion of the lodestar. However, as defendant framed the issue as a question of prevailing party status, the court will structure its own analysis similarly.

settled for a time-served suspension rather than a finding that the defendants had acted inappropriately. Accordingly, defendant argues that plaintiffs should not receive all of their fees and suggest a two-thirds reduction. At the very least, SEPTA requests that the 4.78 hours spent preparing for and attending the appeal hearing be excluded.

■ The court disagrees with defendant's portrayal of the plaintiffs' complaint and the goal of the litigation. As a brief discussion of the complaint reveals, each of the plaintiffs' claims actually focused on the denial of services to the individual plaintiffs following their civil disobedience, and plaintiffs' primary goal was to resume service. The first claim argued that SEPTA had no authority to terminate or suspend non-disabled individuals from riding on their buses and that, accordingly, to deny the plaintiffs Para–Transit services violated the ADA's requirements that SEPTA provide comparable services. *See* Compl. ¶¶ 39–42. The second claim argued simply that SEPTA had no authority to keep plaintiffs from riding on the Para–Transit vans under the applicable ADA regulations. *See id.* ¶¶ 42–48. Finally, the third claim argued that the plaintiffs had been denied a hearing before their service was terminated in violation of due process and the ADA. *See id.* ¶¶ 49–51. By achieving a settlement that permitted plaintiffs to resume riding the Para–Transit vans, they received relief of the "same general type" they requested in the complaint, regardless of what legal theory led to that result. That is, a "common-sense comparison between relief sought and relief obtained," *Institutionalized Juveniles,* 758 F.2d at 911, leads to the conclusion that plaintiffs were the prevailing parties.[4]

In support of its arguments on this point, defendant relies heavily on *Watson v. SEPTA,* Civ. A. No. 96–1002, 1998 WL 720072 (E.D.Pa. Sept.10, 1998), in which a district court determined that a plaintiff should not receive all of the fees requested because she was only partially successful in her ADA claim pertaining to employment discrimination. Plaintiff was reinstated to her former position but she did not gain any further relief following a jury trial. *See id.* at *3. Aside from the fact that *Watson* is not binding on this court, the present case is easily distinguished by differences in the goals of the two cases. Although the *Watson* case does not provide an extensive discussion of the suit, it is clear that reinstatement was only a small part of the relief actually sought by plaintiff, as indicated by her decision to proceed to trial following that relief. Also, the court agrees with plaintiffs that *Watson* is inapplicable because that court's reduction in fees limited the award to the amount recoverable up to the time of reinstatement. In this case, Mr. Gold did not seek any fees for issues on which he did not prevail, and a two-thirds reduction as suggested by defendant would be arbitrary.

■ Having determined that there is no basis to reduce the fees claimed because plaintiffs were not prevailing parties, the court must turn to the question of the reasonableness of the fee itself. Numerous decisions have held that the logical starting point for determining a fee is the number of hours expended multiplied by a reasonable hourly rate, with documentation of both the time and the rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1035 (3d Cir.1996). This calculation will lead to a "lodestar," which is presumptively correct but which may be adjusted should the

---

4. While Mr. Collins did not prevail in the appeal itself, this is not a reason to reduce the attorney's fees because the ultimate settlement gave Mr. Collins the relief he could have been awarded in the administrative proceeding. *See* Decl. of Steven Gold ¶ 21(e). That is, these claims were not distinct from those on which the plaintiffs prevailed because they involved a "common core of facts [and were] based on related legal theories." *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

court find appropriate. *See Rode* 892 F.2d at 1183.

██ In determining the number of hours for which fees may be awarded, the court may exclude time that was spent on issues on which plaintiffs did not prevail or that was "excessive, redundant, or otherwise unnecessary." *Rode,* 892 F.2d at 1183 (*quoting Hensley,* 461 U.S. at 434, 103 S.Ct. 1933). The court should then consider whether the hourly rate itself is reasonable. "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *Rode,* 892 F.2d at 1183; *see also Washington,* 89 F.3d at 1031 (same). In making this determination, "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.*

██ In this case, the time expended is reasonable. Mr. Gold has provided documentation that he spent 24.93 hours on legal work pertaining to the claims on which plaintiffs were successful. *See* Attachment to Mot. for Attorney's Fees. Defendant argues only that it was excessive for Mr. Gold to spend 10.41 hours drafting a complaint and a motion for a temporary restraining order either because of Mr. Gold's extensive experience in this area or because he could have delegated these tasks to a junior associate. Mr. Gold's affidavit, however, explains that the time claimed includes legal research on the issues involved as well as drafting a memorandum of law in support of the motion. *See* Gold Decl. ¶ 21(c). This time does not appear unreasonable given the high quality of the work and the fact-specific nature of the documents presented to the court. While Mr. Gold is an experienced attorney, this is not a case where an attorney "demand[ed] a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the law—and then r[a]n up an inordinate amount of time researching that same law." *Ursic v.*

*Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983). Even an experienced attorney should research the legal issues pertaining directly to the case at hand. Nor is the suggestion that a junior associate could have done the work persuasive: Mr. Gold is a solo practitioner, and there is no indication that he could have delegated any of the tasks to another attorney. *Cf. James v. SEPTA,* Civ. A. No. 93–5538, 1997 WL 698035, at *4 (E.D.Pa. Nov.4, 1997) (reducing Mr. Gold's hourly rate because, in that case, he was working with other attorneys billing at a lower rate who could have performed some tasks). The court is also reluctant to hold that the temporary restraining motion in this case, which required extremely quick but thorough work, was a task that did not merit the attention of a skilled attorney.

██ The court also finds Mr. Gold's hourly rate of $350.00 an hour to be reasonable in this case. In arguing that the court should reduce this rate, defendant maintains that Mr. Gold's rate is not representative of the prevailing rates in the Philadelphia marketplace. Defendant refers to affidavits by two other attorneys who charge $275.00 or $175.00 for similar work. *See* Aff. of James Kilcur ¶ 3; Aff. of William DeStefano ¶ 3. Defendant also cites to an affidavit stating that the rates of law firm partners in the Philadelphia marketplace range from $100.00 to $560.00 an hour, with an average of $277.50 an hour. *See* Aff. of Jeffrey Viola ¶ 5.

Initially, the simple fact that two defense attorneys at one law firm charge $275.00 and $175.00 does not necessarily lead to the conclusion that these rates are representative of the marketplace or that plaintiffs' counsel should be limited to those rates. *See Washington,* 89 F.3d at 1034 (referring to a Third Circuit decision questioning applicability of defense counsel rates to claimed fees by plaintiff's counsel). Even considering defendant's own documentation, however, Mr. Gold's rates actually fall well within an acceptable range, assuming, as does defendant, that the relevant comparison is with rates charged by

partners in Philadelphia firms. *See* Viola Aff. Ex. A (survey of rates). Plaintiffs have provided documentation of Mr. Gold's superior credentials in the area of disabilities law and have supplied affidavits by attorneys stating that Mr. Gold's fees are within the appropriate range for practitioners of his skill and reputation. *See* Aff. of Arthur Kaplan ¶¶ 11–12; Decl. of William Ewing ¶ 8. Mr. Gold's own declaration recounts his extensive experience and notes that he has charged at least one private client $350.00 an hour. *See* Decl. of Steven Gold ¶¶ 17–18; *see also* Resume of Steven Gold. Given this documentation, the court is persuaded that Mr. Gold should be reimbursed at the hourly rate he has requested.[5]

*Conclusion*

The court arrives at the lodestar advocated by plaintiffs: $8,725.50. As there is no suggestion that this amount should be adjusted for any reasons other than those already addressed, the court will award the full amount of fees and costs requested by plaintiffs' motion.

An appropriate Order follows.

### ORDER

AND NOW, this 14th day of October, 1999, upon consideration of Plaintiffs' Motion for Attorney's Fees, and the response thereto, it is hereby ORDERED that the Motion is GRANTED. The court awards attorney's fees in the amount of $8,725.50 and costs and expenses of $150.00 for a total award of $8,875.50. The attorney's fee is calculated at the rate of $350.00 an hour for 24.93 hours.

---

**5.** Defendant relies heavily on another case decided in this district holding that Mr. Gold should be reimbursed at $285.00 an hour rather than the $334.00 an hour he had requested. *See James v. SEPTA,* Civ. A. No. 93–5538, 1997 WL 698035 (E.D.Pa. Nov.4, 1997). Again, that case is easily distinguishable from the present dispute. *James* stated that the rates charged by Philadelphia partners

ranged from $100.00 to $395.00 an hour, substantially lower than in the present case. *See id.* at *3. Mr. Gold's requested rate, which has increased only $16.00 an hour since that case was decided, is no longer at the top of the regional range. *See id.* Also, as noted previously, in *James,* Mr. Gold had the assistance of several other attorneys to whom he could have delegated various tasks.