

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2001

# Lanni v. State of NJ

Precedential or Non-Precedential:

Docket 00-1945

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Lanni v. State of NJ" (2001). *2001 Decisions.* Paper 168.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/168

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 5, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 00-1945 and 00-5020

PHILIP J. LANNI,
Appellant

v.

STATE OF NEW JERSEY; DEPARTMENT OF
ENVIRONMENTAL PROTECTION; ROBERT C. SCHINN;
MICHAEL BOYLE; MARTIN MORALES; BRIAN
HERRIGHTY; JOHN HEDDEN; MARK DOBLEBOWER;
GREGORY HOLJAK; ROBERT WINKEL; CAROL LAKE,
Individually And In Their Official Capacities, Jointly And
Severally.

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 96-cv-03116)
District Judge: Honorable Anne E. Thompson

Argued February 5, 2001

Before: BECKER, Chief Judge, AMBRO and STAPLETON,
Circuit Judges

(Filed: June 5, 2001)

        Linda Wong
        Daniel C. Fleming (Argued)
        Wong & Fleming
        2035 Lincoln Highway, Suite 1050
        P.O. Box 985
        Edison, NJ 08818

         Attorneys for Appellant

        Allison E. Accurso (Argued)
        Mary C. Jacobson
        Steven L. Scher
        Barbara Berreski
        Office of Attorney General of
         New Jersey
        Richard J. Hughes Justice Complex
        Trenton, NJ 08625

         Attorneys for Appellees

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal involves a dispute over attorney's fees awarded in a suit brought under the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("LAD"). Phillip Lanni prevailed below, but argues on appeal that the District Court erred in its calculation of his attorney's fees. Lanni also takes issue with the District Court's order quashing a writ of execution against the State of New Jersey.

I.

Phillip Lanni has a number of learning disabilities that inhibit his ability to solve problems and to process and understand spoken and written language. Lanni was employed, beginning in October of 1990, by the New Jersey Department of Environmental Protection ("the DEP"). Beginning in 1991, Lanni worked as a radio dispatcher at the DEP. Lanni claims that, during his employment in this capacity, supervisors and co-employees made him the butt

2

of jokes, verbally abused him, and mistreated him because of his disabilities.

In 1995, Lanni signed a contract with Linda Wong of the law firm Wong Fleming, P.C., procuring her representation in an action against the DEP. Lanni agreed that, if he entered into litigation, he would maintain a "partial contingency fee arrangement" with Wong Fleming under which he would pay "the greater of: (1) $125 dollars multiplied by the amount of hours expended on [the] case, (2) a fee awarded by a Court, or (3) a contingency fee including any attorneys fees already paid."  The agreement also provided that, in the alternative, Lanni had the right to pay Wong Fleming "the reasonable value of [its] services" which it placed at "an hourly rate of $175 per hour" for the services of Linda Wong and "an equal or lower billable rate" for the services of the other members and employees of the firm.

In 1996, Wong Fleming represented Lanni by filing a ten-count complaint against the DEP and nine defendants employed there. The complaint alleged disability discrimination, a hostile workplace, a failure to accommodate, retaliation, and various other claims under the ADA, the LAD, the Conscientious Employee Protection Act, and the New Jersey Tort Claims Act. In October, 1997, the District Court dismissed the majority of these claims on summary judgment, leaving only one count against three individual defendants and the DEP.

The case was tried during the months of December, 1998, and January, 1999 by Ms. Wong and Daniel Fleming, the named partners of Wong Fleming. After nineteen days of testimony, the jury returned a verdict finding violations of the ADA and LAD by two defendants and the DEP and finding no liability on the part of the third individual defendant. Lanni was awarded $70,930.00 in economic damages and $156,100.00 in non-economic damages. No punitive damages were assessed.

Pursuant to the ADA and the LAD, Lanni was permitted to recover reasonable attorney's fees as a result of prevailing in his law suit. Six months after the verdict, Lanni filed an application that claimed his lawyers were

3

entitled to $1,165,444.88 in attorney's fees and $49,412.75 in costs, for a total fee of $1,214,857.63. Six months later, following hearings and the submission of briefs on the issue of fees, the District Court awarded Lanni $277,723.50 in fees and $24,706.00 in costs. The correctness of the process by which the District Court calculated this award is the primary matter disputed.

II.

We review the District Court's decision to award attorney's fees under an abuse of discretion standard. See Silberman v. Bogle, 683 F.2d 62, 64-65 (3d Cir. 1982) ("We can find an abuse of discretion if no reasonable man would adopt the district court's view."). Whether the correct standards were applied by the District Court in determining the allowable fee is a question of law subject to plenary review. See Rode v. Dellarciprete, 892 F.2d 1177, 1182 (3d Cir. 1990). The District Court's factual findings will be disturbed only if they are clearly erroneous. Id. at 1182-83.

As the prevailing party on an ADA claim, Lanni is permitted to recover an award of attorney's fees. 42 U.S.C. S 12205 ("the court or agency, in its discretion, may allow the prevailing party [in a discrimination case] . . . a reasonable attorney's fee, including litigation expenses, and costs . . ."). The LAD has a similar provision. N.J.S.A. 10:5-27.1 ("the prevailing party may be awarded a reasonable attorney's fee. . .").

The jury's damage award in this case was made under both the ADA and LAD. Accordingly, to the extent the applicable standards for an award of attorney's fees and costs differ under the two statutes and an appropriate award under one exceeds an appropriate award under the other, Lanni is entitled to elect to receive the higher award. As we discuss hereafter, an award under the LAD may reflect any risk of nonpayment of a fee assumed by counsel. An award under the ADA may not reflect that risk. In other respects, the ADA and LAD law applicable here does not materially differ.

Under both ADA and LAD law, a "lodestar" amount provides the starting point for determining reasonable

4

attorney's fees. See Rode, 892 F.2d at 1183. The lodestar is obtained by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See id. A District Court has substantial discretion in determining what constitutes a reasonable rate and reasonable hours, but once the lodestar is determined, it is presumed to be the reasonable fee. See id. Following a determination of the lodestar, either party may seek adjustment. If that party meets the burden of proving that an adjustment is appropriate, the lodestar amount may be increased or reduced at the discretion of the District Court. See id.

Wong Fleming utilized an electronic billing system that tracked time spent by each employee of the firm to the tenth of an hour. Both Ms. Wong and Mr. Fleming alleged that they currently charge $325 an hour for their services. Wong Fleming asserted that its associates were due fees in the $180 an hour range (depending upon experience), while its paralegals and other firm staff were due payment at a lesser rate, but not below $70 an hour. Multiplying these rates by the hours recorded in their billing system, Wong Fleming calculated its lodestar. Wong Fleming then argued that a multiplier of 75% was warranted in this case due to the substantially contingent nature of the compensation structure and the legal risk associated with taking the case. In this way, Wong Fleming arrived at its total requested attorney's fees of $1,165,444.88. Costs and expenses were claimed at $49,412.75.

While accepting that Lanni, as a prevailing party, was entitled to his reasonable attorney's fees, the District Court did not accept Wong Fleming's calculations. Lanni raises five challenges to the District Court's decision regarding costs and fees.

A.

First, Lanni contends that the District Court erred in its determination of reasonable hourly market rates for Wong Fleming's services. The District Court rejected Wong Fleming's asserted rate of $325 an hour for Linda Wong and Daniel Fleming. The District Court instead concluded

5

that the reasonable hourly rates of Wong and Fleming should be calculated on a graduated scale, varying according to the time period during which the services were performed.

The party seeking fees bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case. Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997). If the prima facie case has been made, the opposing party bears the burden of producing record evidence that will contest this rate. Id. If reasonable market rates are in dispute, a hearing must be conducted. Id.

When attorney's fees are awarded, the current market rate must be used. See Rode, 892 F.2d at 1183; Rendine v. Pantzer, 661 A.2d 1202, 1127 (N.J. 1995). The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed. See Rode, 892 F.2d at 1188–89 (describing petition based on current rates as premised on a theory of "delay compensation") Rendine, 661 A.2d at 1127 (To take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed.").

The District Court was apparently well aware of these rules, and stated that it was using a "current market rate" to determine the proper attorney's fees due to appellant. It then inexplicably calculated the fees on a graduated scale roughly tracking the actual historic rates of Linda Wong.1 The District Court observed that the "method of applying current rates is flexible within the discretion of the Court"

_____

1. The District Court arrived at the following partner rates for the following time periods: from November, 1995, to November, 1996, $175 per hour; from December, 1996, to November, 1997, $185 per hour; from December, 1997, to November, 1998, $195 per hour; from December, 1998, to the present, $205 per hour.

Though the earlier rates seem to roughly approximate Ms. Wong's historic rates as evidenced by the record, Ms. Wong's fee petition alleged her current rate during 1999 to be $325 per hour, $120 per hour above the rate awarded by the court.

and then concluded that calculating rates on a graduated scale would be "consistent with the rationale behind calculating a reasonable hourly rate" because it would "offset the costs of the delay in payment to plaintiff's counsel, while still avoiding a `windfall' to counsel beyond their reasonable rate." We are uncertain how the District Court believed its professed use of the current market rate could be harmonized with a graduated scale that awarded historic rates. A current market rate is exactly that -- a reasonable rate based on the currently prevailing rates in the community for comparable legal services. It is not a graduated schedule of past rates. We conclude that the District Court's use of an historical graduated scale to calculate a current market rate for partners at Wong Fleming was a misapplication of the appropriate legal standard.

The District Court also concluded that Wong Fleming's alleged rates for associates and paralegals were unreasonable. The District Court stated that because the highest hourly rate it granted on its graduated scale for the named partners was $205 an hour, constituting 63% of Wong Fleming's alleged rate, Wong Fleming's asserted rates for associates and paralegals should be multiplied by 63% to arrive at a reasonable rate. This method of calculation seems less oriented towards making a proper determination of a reasonable current rate than towards punishing overreaching. Again, we conclude that the District Court failed to follow the applicable legal standards for the calculation of a current market rate.

While we agree with the appellant that the testimony of appellee's expert contains very little in the way of probative "contradictory evidence" of currently prevailing market rates and agree that in some instances, a district court may be justified in awarding rates similar to those requested by Wong Fleming, see, e.g., Blakey v. Continental Airlines, Inc., 2 F. Supp. 2d 598, 603-04 & n.5 (D.N.J. 1998) (awarding $300 per hour though noting that, under the facts of that case, such a rate was "suspect"), we conclude defendants met their burden of coming forward with sufficient other evidence to support a finding that the market rate in this situation was well below the rates claimed by Wong

Fleming. On remand, the District Court should determine the currently prevailing rates in the community for comparable legal services at the time the fee petition was filed.

B.

Second, Lanni claims the District Court erred when it found that the presence of both named partners of Wong Fleming at trial was excessive and determined that allowance of the claimed hours for the presence of a second partner would be unreasonable. The District Court accordingly disallowed the 138.7 hours spent by Mr. Fleming at trial. Wong Fleming asserts that this case was unusually challenging and novel and required the time of two attorneys.

Rendine admonishes that "[t]rial courts should not accept passively the submission of counsel to support the lodestar amount. . . . For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." Rendine, 661 A.2d at 12264 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980)). It is therefore clearly permissible as a general matter under the LAD for a court to find the presence of two named partners during a trial to constitute an excessive and unreasonable expenditure of hours.

The District Court did not abuse its discretion. Given Wong's professed expertise in this area, it would have not been unreasonable to expect her to conduct the trial alone or with the help of an associate. While we believe awarding fees for Fleming's time multiplied by an associate's rate may have been justifiable here, it is not our role under an abuse of discretion standard to substitute our inclinations for those of the District Court. See In re Tutu Wells Contamination Litig., 120 F.3d 368, 387 (3d Cir. 1997) ("An abuse of discretion is a clear error of judgment, and not simply a different result which can arguably be obtained when applying the law to the facts of the case.") (citations and internal quotations omitted). Accordingly, the District Court's disallowance of Fleming's trial time will stand.

8

C.

Third, Lanni claims the District Court erred by deducting 25% from the lodestar because Lanni did not prevail on all of his claims. The District Court's downward adjustment was made under the rubric of Hensley v. Eckerhart, 461 U.S. 424, 433–35 (1983), which teaches that where a plaintiff prevails on one or more claims but not on others, fees shall not be awarded for time that would not have been spent had the unsuccessful claims not been pursued. The Hensley Court termed this a downward adjustment for "limited success." Id. at 436–37.

The District Court noted that only two of the original ten claims had succeeded and that only the DEP and two of the original nine individual defendants had been found liable. Wong Fleming has failed to persuade us that the time spent pursuing the unsuccessful claims contributed in any way to Lanni's success on his remaining claims. Accordingly, we find no abuse of discretion in connection with the Hensley reduction of the lodestar for limited success.

D.

Fourth, Lanni claims the District Court erred by denying its request for a multiplier enhancing the lodestar by 75% based on the risk of counsel's being inadequately compensated. The law of the ADA and LAD diverge on the question of the availability of multiplier enhancements for contingency of compensation. While there is no basis for such enhancements under the ADA, they are permissible under the LAD. Compare City of Burlington v. Dague, 505 U.S. 557, 563 (1992) (finding, under a comparable federal fees provision that contingency fees would "amount[ ] to double counting") with Rendine v. Pantzer, 661 A.2d at1202 (N.J. 1995) (rejecting Dague and approving of contingency enhancements under the LAD).

Where plaintiffs have prevailed on LAD claims in federal court, we have approved of Rendine enhancements and required District Courts to consider their possible application. See Failla v. City of Passaic, 146 F.3d 149, 160 & n.15 (3d Cir. 1998); Coleman v. Kaye, 87 F.3d 1491, 1511 (3d Cir. 1996).

9

LAD cases have not required "pure" contingency in order to warrant an enhancement, but instead have awarded multipliers in cases where fees were "substantially" or "predominantly" contingent. Rendine, 661 A.2d at 1216–17. The agreement in this case was hardly a straightforward contingency arrangement. Lanni paid $32,000 to Wong Fleming during the course of the litigation and was required by contract to pay Wong Fleming a minimum of $125 per hour, whether he won or lost at trial. Lanni points out, however, that the $125 an hour rate was a reduced "partial contingency" rate below Wong Fleming's normal rate (which was $175 for Linda Wong, at least initially). Wong Fleming also represents that it took Lanni's case knowing that he was considering filing for bankruptcy in order to prevent a foreclosure on his home.

The District Court stated: "The Court has considered plaintiff's entitlement to an enhancement under the LAD. While plaintiff's attorneys in this case were competent and the case was well argued, the Court concludes that counsel's performance does not warrant an enhancement in this case." Wong Fleming argues that the District Court misperceived the claim it was making. Wong Fleming makes no argument that Lanni is entitled to an enhancement based on the quality of its performance. Rather, it argues for a contingency enhancement under Rendine, 661 A.2d at 1228 ("We hold that the trial court, after having carefully established the amount of the lodestar fee, should consider whether to increase that fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome.").

The District Court failed to address the Rendine argument. On remand, the District Court must consider whether this is a "substantially contingent" case under the Rendine analysis, and if so, whether a contingency enhancement is warranted.

E.

Fifth, Lanni contends that the District Court erred by reducing all of its costs by 50% based solely on the finding

10

that Wong Fleming had charged what the Court thought to be unreasonable rates for photocopies and faxes. Wong Fleming charged twenty-five cents per page for photocopies and a dollar per page for faxes. The defendants offered evidence tending to show that copies could be purchased for two to six cents per page and faxes should have cost closer to fifty cents per page. The District Court concluded that the costs and expenses requested by Wong Fleming were "excessive and extreme" and awarded only half the requested amount.

Like Lanni, we read the District Court's opinion as offering the disparity between faxing and photocopying costs and the actual costs of those services as the sole justification for the Court's fifty percent reduction. We can understand the District Court's indignation at what it understandably perceived to be overreaching with respect to faxing and photocopying, and we acknowledge that district courts have broad discretion in the imposition of costs. See In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 454 (3d Cir. 2000). Nevertheless, without more explanation than we have been given,[2] we can only characterize the Court's fifty percent reduction as arbitrary. This is not a case in which the District Court has found a pattern of overreaching and has made a reasoned estimate of the overcharges. Here, we find ourselves simply unable to tell from whence the District Court's fifty percent figure came. On remand, the District Court will re-assess the costs and expenses.

_____

2. The appellees offer an explanation which purports to justify the District Court's fifty percent solution. The District Court's opinion, however, bears little relation to the appellees' analysis.

We believe the District Court was justifiably concerned that the fee application of over one million dollars was excessive and overreaching under the circumstances, as was the reimbursement sought for costs. However, while our jurisprudence affords great latitude to a District Court's decision on attorney's fees, it also constrains such decisions by requiring particularized findings or statements of reasons for significant reductions in costs and fees.

11

III.

Also in dispute is a writ of execution, issued against the State of New Jersey seeking satisfaction of the fee award. The District Court entered judgment awarding quantified attorney's fees to Lanni on December 2, 1999. As we have noted, he appealed this judgment. In April of 2000, Wong Fleming had the United States Marshal serve on the Treasurer of the State of New Jersey a writ of execution pursuant to Fed. R. Civ. P. 69 seeking satisfaction of the attorney's fees judgment.3 In May of 2000, the District Court granted a motion from the State of New Jersey to quash the writ of execution. Thereafter, on June 14, 2000, the appellees, believing that Wong Fleming might no longer be representing Lanni, moved for permission to deposit the amount of the fee judgment with the District Court. 4 This motion was granted, and the funds remain on deposit with the clerk. Lanni appeals the order quashing the writ of execution and also filed a motion seeking a writ of mandamus from this court to compel the District Court to vacate its order quashing the writ and to direct the District Court to transfer the lodged funds. We denied this motion on August 23, 2000.

In its order granting the defendants' motion to quash the writ of execution, the District Court noted that interest was accruing on the fee judgment, that the defendants were "not in danger of becoming insolvent," and that "therefore plaintiff's counsel will not suffer prejudice if fees are not paid immediately." App. at 20.

There can be no dispute that Lanni will at some point be able to execute on the fee judgment and receive interest from the date a judgment was entered quantifying the award of fees and cost. See Eaves v. County of Cape May,

_____

3. The writ also sought satisfaction of the merits judgment, which was being processed at the time by the New Jersey Treasury and had been partially paid. The full merits judgment was paid in full by the State Treasurer on April 17, 2000.

4. On June 1, 2000, Ms. Wong filed a certification representing that Lanni had discharged her firm on May 31, 2000. Subsequently, it was represented to the Court that Lanni and his counsel had resolved their dispute.

12

239 F.3d 527, 542 (3d Cir. 2001). Moreover, he currently has security for the payment of that judgment in the form of a cash deposit with the Clerk of the District Court. He insists, however, that he is entitled to immediate disbursement of those funds to him. Appellees respond that comity gave the District Court discretion to stay execution on the judgment, and it did not abuse its discretion by doing so.

We find no record support for the proposition that the District Court's decision to quash the writ of execution was based on considerations of comity. Moreover, we agree with Lanni that the fact that a judgment will earn collectible interest is not alone a sufficient basis for quashing a writ of execution. At the same time, we recognize that Fed. R. Civ. P. 69(a) makes the issuance of a writ of execution discretionary, and we acknowledge that there may be some circumstances in which considerations of comity will warrant the exercise of that discretion in favor of a state defendant.

Our mandate will reverse the judgment of the District Court and remand for further proceedings consistent with this opinion. Execution during the brief period before a new judgment is entered would therefore be inappropriate. If Lanni and his counsel are unwilling to wait until the end of that period, however, they are free to move for disbursement of the funds held by the Court. If the District Court believes that comity counsels against granting that relief, it should explain its view of the matter. 5

_____

5. We note that the parties did not call to our attention or to the attention of the District Court a circuit split on the issue of whether an appeal by a judgment holder automatically stays the judgment. Compare TVA v. Atlas Machine, 803 F.2d 794, 797 (4th Cir. 1986) (an appeal by the prevailing party operates as a stay of execution), with Trustmark Ins. Co. v. Galluci, 193 F.3d 558, 559 (1st Cir. 1999) (an appeal by the prevailing party does not operate as a stay of execution unless there is inconsistency between the appeal and execution on the judgment); BASF Corp. v. Old World Trading Co., 979 F.2d 615, 617 (7th Cir. 1992) (same); Enserch Corporation v. Shand Morahand Co., Inc., 918 F.2d 462, 464 & n.3 (5th Cir. 1990) (same). Because this appeal is now terminated, this issue is moot and we express no opinion thereon.

CONCLUSION

We will vacate the District Court's award of attorney's fees and remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

14