Speros **DRELLES, et al, Appellants,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, et al.**

No. 02–3724.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 2003.

Decided Jan. 12, 2004.

David J. Manogue [Argued], Joseph N. Kravec, Jr., Specter Specter Evans & Manogue, P.C., Pittsburgh, PA, for Appellee Specter Specter Evans & Manogue.

H. Reginald Belden, Jr., Belden Law Firm, Greensburg, PA, Kenneth R. Behrend [Argued], Behrend & Ernsberger, P.C., Pittsburgh, PA, for Appellants.

Before AMBRO, FUENTES, and GARTH, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

In December 1999, Metropolitan Life ("Metlife") settled a Multi–District Litigation federal class action (the "MDL" case) with plaintiffs who were represented by the firm of Specter Specter Evans & Manogue ("Specter"). Following this settlement, various litigants who had opted out of the class filed numerous lawsuits in state courts. The opt-out litigants were represented in the course of the class action and are represented in the state court proceedings by the firm of Behrend and Ernsberger ("Behrend"). In connection with the state lawsuits, Behrend requested tens of thousands of pages of documents from Metlife as well as from a Document Depository established by the District Court pursuant to Case Management Order ("CMO") # 4. Under CMO # 4, Specter administered the Depository and was authorized to charge a fee. The specific dispute here centers on Specter's production of the discovery requested by Behrend and Behrend's failure to pay the document production fee of $41,831.

Based on Behrend's refusal to pay, Specter filed a motion in the District Court to enforce CMO # 4 against Behrend. The District Court, relying on CMO # 4, granted Specter's motion for payment of the fees. Behrend appeals from this Order. Because CMO # 4 authorizes the District Court to compel "any plaintiff obtaining documents from ... the document depository" to pay the reasonable cost of producing the documents, we affirm.

## I.

The facts relevant to this appeal are fairly straightforward. After the MDL settlement, Behrend began representing opt-out plaintiffs in their individual suits filed in Pennsylvania state courts against Metlife for allegedly improper sales practices. In July 2000, Allegheny County Common Pleas Judge Wettick granted a motion to compel discovery made by Behrend, but explicitly gave Metlife the option of providing Behrend the discovery directly or through the MDL case Document Depository. Metlife produced some of the documents directly, but for the remainder referred Behrend to the Document Depository, which was being administered by Specter per CMO # 4. Specifically, CMO # 4 dictates that when counsel for a party to an opt-out suit requests documents from the Depository, the opt-out party must pay Specter for production of such documents.

As part of discovery in the state court lawsuits, Behrend asked Specter for thousands of pages of documents. Specter produced them between August and December 2001 and then sent Behrend a bill for $41,831, a figure arrived at by billing 557.75 paralegal hours worked in retrieving the documents at $75/hour. Behrend believed that it should not have had to pay the retrieval costs, and accordingly secured an order from Judge Wettick that provided that Behrend should not bear the cost of document retrieval from the Depository. Thereafter, Specter moved (as Plaintiff) in the District Court to force Behrend (as Defendant) to pay Specter the

$41,831 pursuant to CMO # 4. Magistrate Judge Benson granted the motion, and the District Court affirmed. Specifically, the Magistrate Judge held that CMO # 4 precluded Specter from bearing any of the cost of the document retrieval, and that if Behrend wanted to be compensated by Metlife, it should seek such compensation in the state court venue of the opt-out litigation.

## II.

### A.

Behrend argues that CMO # 4 does not apply because the opt-out plaintiffs were not bound by the MDL case or its settlement.[1] Behrend alternatively asserts that the Document Depository had already closed, and so its rules were no longer in effect. Behrend's third contention is that the terms of CMO # 4 itself exclude from its ambit Behrend's request for production. Finally, Behrend alleges that even if CMO # 4 applies, federalism concerns should have prevented the District Court from "contravening" Judge Wettick's order that the documents be produced at no cost to Behrend.

■ The arguments are unpersuasive. First, the fact that the opt-out plaintiffs are not bound by the settlement is irrelevant here: the District Court has not made any rulings hampering the opt-out plaintiffs' options in their state court litigation, or foreclosing any of their claims.[2] Rather, the District Court has made a

---

1. Specter argues that the appeal is jurisdictionally infirm because it has been made in the name of the opt-out plaintiffs, rather than Behrend itself. We are not persuaded by Specter's argument because Behrend has argued that the fees involved will be charged against the opt-out plaintiffs, as the real parties-in-interest. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333, 100 S.Ct. 1166,

63 L.Ed.2d 427 (1980) (explaining that a "party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal").

2. We have held in *Drelles v. Metropolitan Life Ins. Co.*, Nos. 02–4037 & 02–4270, that the opt-out plaintiffs are in no way bound by the class rulings.

ruling on the application of CMO # 4 to a request for production of documents from the MDL Document Depository, and nothing more. Behrend cites to a litany of cases in support of its contention that the opt-out plaintiffs were not subject to the MDL or any of its orders. Those cases, however, all deal with attempts to enjoin opt-out plaintiffs from taking certain actions in their state court proceedings. The case before us is entirely different: it concerns the District Court's enforcement of its own case management directive.

Behrend's next argument is that the Document Depository was closed in December 2000, a year after the MDL case settled. Behrend relies on the Settlement Agreement, which states: "One year after the Final Settlement Date (unless the time is extended by agreement of the Parties), Plaintiffs and their counsel shall return to Defendants' Counsel all documents ... produced by Defendants in this Action." Appellee's Ex. A at ¶ C. Specter responds that the parties did extend the time of the depository. The continued existence of the Depository supports Specter's assertion, as does the fact that both Judge Wettick and the District Court recognized the Depository as a present institution.

Behrend's third argument is that CMO # 4 does not apply to its document production request because it was made in a state court action, not an action before the District Court. CMO # 4 provides that: "This Order shall apply to all actions against Metropolitan Life Insurance Company ... that have been or may thereafter be filed in, removed to or transferred *to this Court*." App. at 312a (emphasis added). Behrend misreads the import of this passage. The passage refers to the creation of the Depository from documents in the MDL litigation, not to subsequent use of the Depository. This is made clear by the fact that CMO # 4 § XII(B)(2) explic-

itly refers to dealing with document requests from state-court plaintiffs, explaining that such plaintiffs must determine their entitlement to documents in their state fora before retrieving those documents from the Depository. In short, CMO # 4 clearly encompasses document requests by state-court plaintiffs.

■ Behrend's final argument grounded in notions of federalism simply mischaracterizes the proceedings in this case. Judge Wettick's orders established three things: 1) Behrend was entitled to certain documents from Metlife; 2) Metlife had the option of referring Behrend to the depository; and 3) Behrend would not be responsible for the cost of production vis-a-vis Metlife. Judge Wettick's order, however, did not (and could not) have any effect on Specter, who was not a party to the state court litigation. Once Behrend agreed to pursue its document request from the Depository, it implicitly agreed to abide by CMO # 4. As the Order clearly provides: "Counsel for *any* plaintiff obtaining documents from Defendants or the document depository as set forth above shall pay the expenses of [Specter] in producing the document ... and shall be subject to the Orders of this Court regarding the use of those documents." CMO # 4 § XII(C), App. at 322a (emphasis added). Thus, Behrend's argument that the District Court lacked personal and subject matter jurisdiction is wholly without merit.

In further support of its proposition that the District Court is improperly interfering with its state-court litigation, Behrend cites to an order by the same District Court Judge rejecting a prior motion filed by Behrend in one of its state-court opt-out cases, *Maleski,* to compel Metlife to produce documents from the Document Depository. In the *Maleski* case, Behrend asked the District Court to make a discovery ruling about whether Behrend was

entitled to production of certain documents. The District Court in *Maleski* denied Behrend's motion because it dealt wholly with evidentiary matters from the state-court litigation and, moreover, CMO # 4 § XII(C) itself dictated that the state court must decide motions to compel. App. at 322a. In the case before us, in contrast, the relevant inquiry is not the propriety of certain state-court discovery, but the proper use of the Document Depository. Specter's motion does not ask for any ruling that will affect the state-court proceedings, but merely that the Document Depository be administered pursuant to CMO # 4. Thus, *Maleski* is totally inapposite to the case before us.

Moreover, nothing in CMO # 4 contradicts Judge Wettick's rulings or Pennsylvania law. CMO # 4 simply dictates that Specter must be reimbursed for its production by the requesting party; if Behrend in turn needs to be reimbursed for that cost by Metlife, it can seek that reimbursement from Judge Wettick. In short, all of Behrend's attempts to show a federalism-based conflict lack merit.[3] Accordingly, we affirm the District Court's Order enforcing CMO # 4 in Specter's favor.

### B.

Behrend next argues that the District Court should have held a separate hearing to decide whether Specter's proposed $75 hourly rate was reasonable. Behrend observes that recent Third Circuit caselaw holds that an evidentiary hearing is required when the reasonable hourly rate for fees is disputed, and that failure to hold such a hearing is reversible

error. *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3rd Cir.1997); *accord Planned Parenthood of Cent. N.J. v. The Attorney Gen. of the State of N.J.*, 297 F.3d 253, n. 5 (3rd Cir.2002); *Lanni v. New Jersey*, 259 F.3d 146, 149 (3rd Cir. 2001). A prior case from the Third Circuit, however, holds that "failure to conduct an evidentiary hearing ... is not reversible error.... A hearing must be held only where the court cannot fairly decide disputed questions of fact without it." *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 377 (3rd Cir.1987). It is well established that in a conflict between decisions of different panels, the oldest one controls. *E.g., Ryan v. Johnson*, 115 F.3d 193, 198 (3rd Cir.1997). Thus, the District Court's failure to hold a hearing is not automatically reversible error, but rather must be evaluated under *Blum*.

In this case, we discern no need for a hearing: the affidavits and briefs speak for themselves, and there is no dispute as to how Specter or Behrend reached their proposed hourly rates. The only disputed issue is whether Specter should have billed the document retrieval time at a reduced paralegal rate or a file clerk rate, and that issue can be adequately explored based on the arguments in the briefs.[4]

### C.

Behrend argues that the $75 hourly paralegal rate was excessive because document retrieval is file clerk labor, and file clerks generally are paid only $11/hr. Behrend insists that the $75 rate results in an impermissible profit for Specter be-

---

3. These points are elaborations on the well-expressed opinion of the Magistrate Judge, which was adopted by the District Court. App. at 167a–68a.

4. Specter alleges that Behrend did not contest the reasonable hourly rate in the proceedings below, but Specter is incorrect. While Behrend did not bring up the issue in its original brief before the Magistrate Judge, Behrend did raise the issue in its motion and subsequent amended motion. App. at 36a, 92a.

cause the document retrieval was too menial to qualify as bona fide legal work. Specter responds that the $75 rate was already discounted from the normal paralegal rate of $125/hr, and so was eminently reasonable. The Magistrate Judge agreed with Specter, and since Behrend had not yet questioned the reasonableness of the hourly rate, the order addressed the issue in the following succinct fashion: "The court has reviewed that [sic] affidavits submitted by the parties, and finds that the rate charged for paralegal work, $75 per hour, is reasonable." App. at 168a. Although Behrend contested the hourly rate in his objections, the District Court summarily affirmed the Magistrate Judge without dealing specifically with this new argument.

We affirm the $75 rate as well within the District Court's discretion. We have carefully examined the remainder of Behrend's arguments and find them to be without merit. Consequently, we affirm the District Court's judgment in its entirety.