NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1126
_____

M.D. STEVEN S. SIMRING,
United States of America, ex rel.

v.

RUTGERS, The State University of New Jersey;
UNIVERSITY HOSPITAL; NEW JERSEY MEDICAL SCHOOL;
JAMES LAWLER; JOHN DOES 1-25, (Employees of University of Medicine and
Dentistry), UMDNJ-University
Hospital and/or New Jersey Medical School; CHAIRMAN OF THE BOARD
UNIVERSITY PHYSICIAN ASSOCIATES;
MICHAEL SAULICH; CATHERINE GIBBONS; UNIVERSITY PHYSICIAN
ASSOCIATES OF NEW JERSEY INC.

M.D. Steven S. Simring,
Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-04-cv-03530)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit LAR 34.1(a)
March 2, 2015

Before: AMBRO, SCIRICA, and ROTH, Circuit Judges

(Opinion filed: August 4, 2015)

---

OPINION[*]

---

AMBRO, Circuit Judge

There are few cases judges like less than disputes over attorneys' fees. And the tedium of reviewing reams of spreadsheets in the service of lining lawyers' pockets is exponentially greater for district and magistrate judges than for us on appeal. Nonetheless, we must review fee applications and draft clear accounts of why a fee is awarded or not. The District Court in this case put in yeoman's work trying to guide the parties to a negotiated settlement, but when the parties' intransigence forced the Court to rule on the fee petition, it did not include enough information in its opinion to allow for meaningful appellate review. With regret, though we affirm in part, we also vacate in part and remand.

## I. Background

This appeal results from Dr. Steven S. Simring's False Claims Act (FCA) suit alleging that the University of Medicine and Dentistry of New Jersey (now part of Rutgers University) engaged in a lengthy, multimillion-dollar scheme to bill taxpayers twice for the same services. The FCA was passed during the Civil War to root out frauds perpetrated by contractors with the Government. It allows private individuals to sue on behalf of the United States; such Plaintiffs are called "relators," as the law also requires

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

them to transmit (or "relate") their allegations to the Government.  The United States must decide whether to intervene in the relator's lawsuit, lending the Government's substantial expertise, negotiating leverage, and investigative resources to the cause.

When Simring filed the suit, Henry F. Furst was his lawyer.  Simring informed the U.S. Department of Justice (DOJ) of his allegations, and the DOJ launched an investigation to determine whether it would intervene.  The United States' decision to intervene (or not) is typically the most consequential moment of an FCA case.  Hence, in representing Simring, Furst devoted much of his energy to convincing the DOJ to take part in the case.  For assistance in this crucial task, he enlisted Harry Litman, a former U.S. Attorney for the Western District of Pennsylvania and now a well-regarded lawyer in private practice.  In 2008, four years after Simring notified the DOJ of his case, the Government decided to intervene, and in June 2009 the parties settled for $4.45 million (this and all other large numbers in our opinion are approximate).

The FCA entitles a prevailing relator to "reasonable attorneys' fees."  31 U.S.C. § 3730(d)(1), and after the settlement Simring promptly sought to recover fees for Furst and Litman.  When he did not immediately succeed, Simring engaged the law firm of Stone & Magnanini.  Regrettably, the litigation over Furst and Litman's fees has lasted six years so far, and this appeal is but the latest—and not the last—chapter.

In December 2010, Simring petitioned the District Court for a total of $1.08 million in aggregate fees and costs to compensate Furst, Litman, and Stone & Magnanini. The petition consisted of the lawyers' billing records, their hourly rates, and evidence of the rates of other lawyers in the community.  Though Rutgers did not dispute Simring's

entitlement to fees, it argued that Furst and Litman charged too high a rate for too many hours. In October 2012, a Magistrate Judge drafted a Report and Recommendation (R&R) suggesting that Stone & Magnani be awarded nothing and that the other lawyers receive in total $366,000. Simring promptly lodged objections with the District Court, which allowed Stone & Magnanini to file a petition for work performed up to May 8, 2013. The Court then modified the recommended ruling in part to award Stone & Magnanini $313,000 and to increase the compensation for Litman by $54,000 (the aggregate fees awarded were thus $733,000). Simring moved for reconsideration, and the motion was granted in part on December 16, 2013, to award $18,000 previously denied for engaging a consultant who advised on encouraging DOJ intervention.

On December 31, Simring petitioned for attorneys' fees for work done between May 8 and December 31. The District Court denied this motion. Simring appeals, arguing that Furst and Litman remain not fully compensated for their work before May 8, 2013, and that all his lawyers were entitled to compensation for their work after that date. We refer to the R&R, and the District Judge's opinion insofar as it approved the R&R, collectively as the decision of "the District Court," and when we mean to differentiate between the Judges' decisions, we discuss the opinion of the District Judge or the Magistrate Judge.

## II.     Discussion

### A.     Governing Law

A relator must receive "reasonable" attorneys' fees when an FCA suit results in a settlement in which the defendant agrees to pay money. 31 U.S.C. § 3703(d). Fees are

4

presumed reasonable when calculated using the "lodestar" method, by which a court assigns a reasonable hourly rate and multiplies that rate by the reasonable number of hours expended on the litigation. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). In calculating the fee, a court may assign different rates or amounts of time to different categories of tasks. For example, a district court acts within its discretion when it determines that it would be reasonable for an attorney to charge less for time spent filing papers than for drafting a brief. *Cf. id.* at 567. The total fee ($F$) is the product of the reasonable hourly rate ($R$) and the reasonable number of hours ($H$), or, in mathematical terms, $F = R \times H$. Where a court determines that different hourly rates or numbers of hours are appropriate for given types of tasks, it must do a separate calculation for each type ($t$) such that $F_t = R_t \times H_t$. The reasonable fee is the sum of each value for $F_t$.

A reasonable hourly rate is the "prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). To determine a reasonable number of hours, the starting point is the number actually spent on the litigation, but a district court may "exclude hours that are not reasonably expended. Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citation omitted). Compensable time includes hours spent on tasks "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Del. Valley*, 478 U.S. at 561 (internal quotation marks omitted). A court may deduct inadequately documented hours. *Rode*, 892 F.2d at 1183.

5

## B.    *The Fee Applications*

### 1.    <u>Matters on Which We Affirm</u>

The District Court held that Furst's proposed billing rate of $450 per hour was reasonable.  Neither party disputes this holding.

The Court also reduced Litman's hourly rate from $850 per hour to $625.  Simring challenges this determination, as he contends that Litman charged his paying clients $850 per hour and that the evidence Rutgers mustered to rebut the rate was unreliable.  Although it agreed with Simring that Rutgers' evidence in support of its proposed hourly rate was unhelpful, the Court considered affidavits offered in connection with Furst's application to determine Litman's rate.  Even though they were offered in support of Furst's rate, to the Court they showed that a lawyer of Litman's skill and experience in New Jersey would reasonably have charged $625 per hour.[1]

---

[1] The parties dispute whether the relevant community is, as Rutgers urges, New Jersey (where the lawsuit was filed) or, as Simring contends, Washington, D.C. (where the DOJ was encouraged to intervene).  Our initial opinion in this matter accepted Simring's apparent concession that the issue "is ultimately immaterial."  Reply Br. at 18; *see also* Simring Br. at 48 ("Litman's usual billing rate in fact set the value of his services in the New Jersey market, as well as nationwide."); *id.* at 49–50 (arguing that an affidavit by a different FCA lawyer that he billed at similar rates in New Jersey, another affidavit by a former New Jersey U.S. Attorney, National Law Journal surveys of billing rates in New Jersey, and decisions of New Jersey bankruptcy courts, all support Litman's rate); Reply Br. at 19 (same).  Simring moved for panel rehearing on the grounds that we misconstrued his argument and that he has not conceded that the relevant forum is immaterial.  To mitigate any possible perception of unfairness, we address the merits of the parties' dispute over the proper forum.

We affirm the District Court's choice of New Jersey—*see* R&R at 5 n.3.  We have held that the proper forum for calculating attorneys' fees is the one "in which the litigation is lodged."  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 704 (3d Cir. 2005) (quoting *Report of the Third Circuit Task Force on Court Awarded*

On appeal, Simring argues that the Court erred in considering evidence offered in support of Furst's—not Litman's—rate and that it should not have looked to evidence Simring introduced to reduce the rate he was seeking. Rather, he believes the Court was only entitled to rely on *Rutgers'* evidence to dispute Litman's rate. But the Court was permitted to consider all the evidence in the record and draw reasonable inferences from it regardless of its proponent. It properly "rejected the prevailing party's evidence of rates" when that evidence failed to persuade. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). Perceiving no abuse of discretion in the determination that $625 was a reasonable hourly rate, we affirm that reduction.

---

*Attorney Fees* (hereinafter "*Task Force Report*"), 108 F.R.D. 237, 261 (1985). Notwithstanding that Litman negotiated with Government lawyers in Washington, D.C., we think it plain that the litigation here was "lodged" in New Jersey, as that is where the Complaint was filed. *Cf. Task Force Report* at 261 (recommending district courts create Fee Advisory Committees "on a district-by-district basis to reflect regional differences" to promote "objectivity and efficiency" even though "standardized rates . . . will undercompensate certain attorneys and overcompensate others"). There are two exceptions to this "forum rate" rule: (1) "when the need for the special expertise of counsel from a distant district is shown"; and (2) "when local counsel are unwilling to handle the case." *Interfaith Cmty. Org.*, 426 F.3d at 705 (internal quotation marks omitted). Simring's only argument in favor of either of these exceptions is the conclusory remark that "[t]he undisputed evidence in the record would justify application of these exceptions here." Simring Br. at 47 n.18. In the absence of support for this conclusion, we decline to apply either exception.

Although we grant panel rehearing in this limited extent, we also hold that Simring's petition, which will not result in an increased fee for Litman, is not the sort of task that we consider "useful and of a type ordinarily necessary to secure the final result obtained from the litigation," *Del. Valley*, 478 U.S. at 561 (internal quotation marks omitted), and thus should not be included in his final fee petition before the District Court. The rehearing petition sought to change, in Simring's own words, an "ultimately immaterial" (and quite arguably correct) point in our opinion, and it is only for the sake of complete accuracy that we issue this amended version.

7

Simring also claims the District Court erred in using rates in effect at the time the fee petitions were filed instead of when the fees were ordered. We have held, however, that "[w]hen attorney's fees are awarded, the current market rate must be used," and that "the current market rate is the rate at the time of the fee petition," *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001), notwithstanding the delay between the time of the petition and the time of the final award (at least two years in *Lanni*, given the date of our mandate). We therefore affirm the District Court's choice of date for calculating Furst and Litman's rates.

## 2.     Matters on Which We Vacate

Simring engaged three law firms in this litigation. He presented different billing records for each firm involved; each sought compensation for different work at different hourly rates. Those billing records should be analyzed separately except where efforts were duplicative. For the most part, the District Court analyzed the lawyers' hourly rates separately, but, when discussing why the hours Furst and Litman spent on certain tasks needed to be reduced, it analyzed those lawyers' bills together.

The most significant problem with the approach of not differentiating between the submitted billing records is that Furst and Litman had different billing methods: Furst "task billed," meaning that he recorded the amount of time he spent on each discrete task separately, while Litman "block billed," that is, he listed all of his tasks performed on a given day and then recorded the total amount of time per day he spent on Simring's case. Block billing makes it more difficult for courts to review hours expended because we do not know how many hours a lawyer spent on a discrete task. For reasons that are not

8

clear, the Magistrate Judge wrote her R&R as if both attorneys block billed and noted that this approach made it difficult to discern which tasks were compensable and which were not; the District Judge did not disturb this misreading of Furst's records. On remand, the Court should clarify which specific entries of each lawyer are unreasonable. To the extent block billing poses problems for its review, those problems are relevant only to the petition for Litman's fees, as Furst did not block bill.[2]

### a. Administrative Tasks

The Magistrate Judge recommended that Furst and Litman's rates be reduced to $95 per hour for "simple legal and/or administrative tasks that could have been performed by an associate, paraprofessional, or secretary." Mag. Op. at 23. She cited three examples of these tasks, but did not inform the parties which specific time entries she recommended compensating at $95 per hour. This decision makes us unable to determine whether the rate was appropriately reduced. We also note that grouping "simple legal and/or administrative tasks" may well have conflated substantially different functions: a simple legal task often requires at a minimum three years of legal education followed by admission to the bar even to be allowed by law to perform it; a simple administrative task typically does not. Similarly, a task that must be performed by an associate generally ought to be compensated at a higher rate than a task that can be

---

[2] We note that, should the Court deem it advisable, it would act within its discretion if it ordered Litman to "re-format and re-submit [his] billing records" to make them more easily reviewable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1204 (9th Cir. 2013).

9

performed by a paralegal. But we do not actually know what tasks the District Court considered to be worthy of this fee reduction nor how many hours they accounted for.

### b. Reduced Billing Categories

The Magistrate Judge further recommended several reductions to the number of hours contained in both lawyers' billing records. Specifically, she did so for: "vaguely described time"; "review and discussion of newspaper articles detailing breaking and entering at UMDNJ's offices"; "communicating and meeting with state deputy attorney[s] general[]"; "negotiating and recovering Dr. Simring's share from the [G]overnment"; "searching for and communicating with expert witnesses who were never ultimately retained"; hours spent when "counsel reviewed materials, performed legal research, conferred with one another, and drafted a Second Amended Complaint"; "time spent . . . retaining Mr. Litman's firm, including but not limited to[] running a potential conflicts check[] and the possibility of retaining other counsel"; and fees for seeking fees. Mag. Op. 25–30. With the exception of the recommended reduction for fees-on-fees, the District Judge agreed with the Magistrate Judge.

However, neither Judge recorded how many hours these categories represented or which billing entries they matched. The closest the Magistrate Judge got was the citation, "*See* Furst and Litman Billing Records," Mag. Op. at 29, which is not a helpful indication of the source of her information. We cannot review the reasonableness of these deductions without knowing what they were.

In addition to the vagueness of the reductions for the number of hours spent on these tasks, Simring makes well-taken objections to the District Court's decision that any

10

hours spent on three specific categories of tasks were *per se* unreasonable: communicating with the New Jersey Attorney General's Office; preparing for possible expert testimony; and preparation of a second amended complaint.

The Court disallowed time spent communicating with the State Attorney General's office because "the Attorney General of New Jersey never intervened or otherwise formally joined in this action." Mag. Op. at 26. Similarly, the Magistrate Judge cited that there was "no discovery in this case," and that the experts Simring's counsel communicated with were not ultimately retained, as the reasons why the hours spent developing an expert case were not reasonable. *Id.* at 27. The District Court also held that time spent drafting a second amended complaint was wasted simply for the reason that the document was not filed.

The error in these reductions is that they assume it is always a waste of time to pursue a litigation strategy that does not produce a tangible result before the Court. And although the District Judge recognized the Magistrate Judge's overstated focus on in-court and court-supervised advocacy, he did not disturb the Magistrate Judge's reduction of hours for these tasks. Whether the New Jersey Attorney General formally joined the action, whether an expert was retained, and whether a second amended complaint was filed, do not answer whether making those preparations was "useful and of a type ordinarily necessary" to the result Simring got. *Del. Valley*, 478 U.S. at 561. In many cases, diligent lawyers will pursue many lines of inquiry both in factual investigation and legal research that may not end up formally becoming a part of a court's record. But background work cannot categorically be deemed time wasted. To be sure, if Furst and

11

Litman performed these tasks to pad their bills (at a time when it was unclear whether they would receive anything), the hours spent on them would be unreasonable. But if a reasonable FCA attorney in building her case would have consulted experts or state officials or would have drafted an amended complaint at the time Furst and Litman did so, then the requested fees can be awarded. *Cf. Planned Parenthood v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 270–71 (3d Cir. 2002) (awarding fees for time spent preparing expert who did not testify).

c.      Litman's Legal Research

We also vacate the reduction in Litman's hourly rate for any day on which he did any legal research. As already noted, Litman block billed, obfuscating exactly how much time he spent on any given task. To address this lack of clarity, on any day in which one of the tasks Litman performed was listed as "legal research," the District Court reduced his hourly rate from $625 to $450.

Many Courts of Appeals have endorsed applications of across-the-board reductions in hourly rates due to the vagaries of block billing. *See McAfee v. Boczar*, 738 F.3d 81, 90 (4th Cir. 2013); *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). We need not determine whether we agree with this approach, as we vacate on the ground that the District Court's decision to apply a 39% reduction to Litman's hourly rate to all days when he conducted legal research is arbitrary. Legal research is an essential part of a lawyer's job and should not always be deemed "associate level" work. Mag. Op. at 13. Nor does any amount of legal

12

research on a given day so infect a lawyer with indolence that the value of all the work done on the whole day should be reduced by more than a third. We do not decide that Litman is entitled to compensation for every hour he claims; we only hold that more reasoning must accompany the ultimate decision.

### d.    Fees-on-Fees

We further vacate the decision not to award fees-on-fees to Furst and Litman for the time spent litigating the fee petition before engaging Stone & Magnanini. The only reasoning offered was that it was "unfair" to bill Rutgers for so many lawyers. Dist. Op. at 5. But the principal question is whether the product of the relevant hourly rates and the amount of time spent by all the lawyers and paraprofessionals involved is reasonable. If the decision to bring in a third law firm resulted in a duplication of efforts, that would be a reasonable ground to disallow a portion of the requested fees. Again, we do not necessarily quarrel with the result the District Court reached, but we simply do not have enough information to gauge whether that result reflected a reasonable rate charged for a reasonable number of hours.

### e.    Supplemental Fee Petition

The District Court denied Simring's petition for fees incurred between May 8 and December 31, 2013. The only reasoning in the Court's Order is that "Relator has already been more than reasonably compensated for the time spent by his lawyers." As we have held before, "if the district court's fee-award opinion is so terse, vague, or conclusory that we have no basis to review it, we must vacate the fee-award order and remand for further proceedings." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000). It

13

may be that the lawyers' work between May and December of 2013 was entirely noncompensable, but before we decide we would benefit from the District Court's analysis of whether the work performed was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Del. Valley*, 478 U.S. at 561.

### III.    Conclusion

We affirm much of the District Court's decision, though we vacate the fee award in part and remand for further proceedings.  As we do not know how the Court evaluated the time entries submitted, we are unable to review whether the reductions it made resulted in reasonable rates and hours, the two ingredients that yield a lodestar fee.  Thus we vacate in part and remand.